ENOCH ROBINSON, APPELLANT, v. MAURICE H. SIGLER, WARDEN, NEBRASKA PENAL COMPLEX, APPELLEE.

187 N. W. 2d 756

Filed June 11, 1971. No. 37845.

Lawrence E. Murphy, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Enoch Robinson, an Omaha Indian who is now serving a life sentence in the Nebraska Penal Complex for murder, appeals from the dismissal of his application for a writ of habeas corpus. The application attacks the jurisdiction of the State to prosecute an Omaha Indian for the murder of another Omaha Indian on the Omaha Indian Reservation in Thurston County, Nebraska. We affirm.

On January 13, 1969, appellant murdered an Omaha Indian in the village of Macy, Thurston County, Nebraska. This court affirmed appellant's conviction for that offense on January 9, 1970. State v. Robinson, 185 Neb. 64, 173 N. W. 2d 443. This was more than 9 months before the Secretary of the Interior published an Order on October 24, 1970, purporting to accept retrocession of jurisdiction of offenses committed by or against Indians within the boundaries of the Omaha Indian Reservation in Thurston County, Nebraska. Appellant's claims are predicated on his theory that the State of Nebraska did not have jurisdiction of his person or of the particular offense involved.

Appellant's first contention, relying on United States v. Kagama, 118 U. S. 375, 6 S. Ct. 1109, 30 L. Ed. 228 (1886), is that the murder of an Omaha Indian by another Omaha Indian within the limits of the Omaha Indian Reservation is a federal offense, exclusively cognizable in the courts of the United States. Without reference as to whether concurrent jurisdiction may have existed prior to the passage in 1953 of Public Law 280, 18 U.S.C.A., section 1162, there is no question that

act withdrew federal jurisdiction over offenses committed in Indian conutry. It specifically granted the State of Nebraska exclusive criminal jurisdiction over Indian country to the same extent such jurisdiction applied elsewhere in the state. When appellant's offense was committed only the State of Nebraska was exercising jurisdiction over criminal acts in Indian territory in Nebraska.

Appellant places some reliance on the old Nebraska case of Ex Parte Cross, 20 Neb. 417, 30 N. W. 428, as a controlling case herein. That case was mere dictum, and obviously no authority for the present question. It is to be noted that the court there did not consider the Act of Congress approved August 7, 1882, 22 U. S. Stat. at Large 341, in which the Secretary of the Interior was authorized by and with the consent of the Omaha Tribe of Indians in open council to convey a portion of the land of the Omaha Indians as therein provided, and to distribute the remaining lands to the individual members of the tribe and certain portions to be held in trust for the tribe as common property.

Section 7 of the Act of 1882 specifically provided: "That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of said tribe of Indians shall have the benefit of and be subject to the laws, *both civil and criminal*, of the State of Nebraska; and said State shall not pass or enforce any law denying any Indian of said tribe the equal protection of the law." (Italics supplied.) The foregoing statute has never been repealed and applies specifically to Omaha Indians and the Omaha Indian Reservation.

With reference to the claim of appellant that United States v. Kagama, 118 U. S. 375, 6 S. Ct. 1109, 30 L. Ed. 228 (1886), abrogated the effect of this act, we call attention to Hallowell v. United States, 221 U. S. 317, 31 S. Ct. 587, 55 L. Ed. 750, a 1910 case which is premised on the effectiveness of the Act of 1882, and recognized

section 7 of the act as granting civil and criminal jurisdiction to the State of Nebraska over the Omaha Indian Reservation.

Appellant argues that a treaty of March 16, 1854, between the Omaha Tribe of Indians and the United States is controlling herein, and that it cannot be arbitrarily abrogated by Congressional action. It has been consistently held that the power of Congress over Indian affairs is plenary, that it cannot be limited by treaty, and that an Indian treaty may be abrogated by Congress so long as individual rights acquired under the treaty are not destroyed. Lone Wolf v. Hitchcock, 187 U. S. 553, 23 S. Ct. 216, 47 L. Ed. 299. In any event, the Act of 1882 modified the original treaty.

Appellant then argues that Public Law 280, 18 U.S.C.A., section 1162, is unconstitutional as applied to the Omaha Indians. He contends that the act conflicts with three different substantive due process prohibitions: (1) The prohibition against arbitrary legislation; (2) the prohibition against unequal application of a law or unreasonable classification within a law; and (3) the prohibition against vagueness in Congressional legislation. There is no merit to any of these points.

Public Law 280 applied specifically to five states including Nebraska, and excepted certain reservations in three of those states other than Nebraska. However, it also contained a provision giving all other states the right to acquire similar jurisdiction if they so desired. There were reasons which are immaterial for our present discussion why the five states, including Nebraska, were specifically listed. The Indian groups within the five states for the most part were agreeable to the transfer of jurisdiction. The groups opposing such transfer, which had a tribal law and order organization functioning in a reasonably satisfactory manner, at their request were omitted from the transfer.

The United States Constitution contains no direct grant of power to the federal government over criminal

offenses by Indians in Indian country. As stated above, Congress has plenary power over Indian affairs as well as the power to abrogate treaty rights. Consequently, it had the power to grant exclusive criminal jurisdiction to the states, and particularly so when this was done with the concurrence of the Indian groups involved. The inherent police power of the states applies both to Indians and to Indian country, except to the extent that the federal government has preempted the field, and therefore the federal government may withdraw from the field and turn jurisdiction back to the states when it chooses to do so. Appellant has the burden to show just how and why Public Law 280 violates the Constitution of the United States. This he has failed to do.

Appellant's argument is adequately answered in Anderson v. Gladden, 293 F. 2d 463, in which the United States Circuit Court of Appeals for the Ninth Circuit said: "We further agree with the state court's holding on the question of the power of Congress to relinquish this jurisdiction in favor of the states. The power over Indians was deemed not so inherently or exculsively federal as to apply beyond the extent to which the federal government has preempted the field, and the federal government could thus withdraw from the field and turn the subject matter back to the states when it chose to do so."

Appellant then argues that even if we were to find Public Law 280 constitutional, Nebraska never accepted the benefit of its provisions. By the legislation, Congress withdrew from the federal court jurisdiction over crimes affecting Indians on Indian Reservations in five specifically mentioned states. No acceptance was required of those states. The State of Nebraska, being one of them, had either concurrent or residual jurisdiction over the crime of which the appellant had been convicted, and full jurisdiction over such crime was returned to the State of Nebraska on passage of Public Law 280.

Lastly, appellant argues that the Indian Civil Rights Act of 1968 nullified any possible state jurisdiction over the offense herein. By this argument, he is raising the question of retrocession which has heretofore been adequately answered by this court in State v. Goham, 187 Neb. 34, 187 N. W. 2d 305. Unlike Goham, appellant's conviction had become final before the Secretary of the Interior attempted to accept retrocession.

For the reasons given, there is no merit to any of appellant's assignments of error. The judgment of dismissal is affirmed.

AFFIRMED.