The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Corleen LUNA, Defendant-Appellant,

and

The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Felix S. HERRERA, Defendant-Appellant.

Nos. 82CA1200, 82CA1206.

Colorado Court of Appeals, Div. II.

April 5, 1984.

Rehearing Denied May 3, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes, Asst. Atty. Gen., Denver, for plaintiffs-appellees.

David F. Vela, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for defendants-appellants.

Maynes, Bradford & Shipps, Thomas H. Shipps, Durango, for Southern Ute Indian Tribe of the Southern Ute Indian Reservation, amicus curiae.

VAN CISE, Judge.

Charged with sale and distribution of controlled substances, defendants, Corleen Luna and Felix S. Herrera, moved to dismiss the information on the ground that the state lacked jurisdiction to prosecute because these alleged crimes were committed by Indians in "Indian country." After an evidentiary hearing, the motion was denied.

Following a trial to the court, Luna was convicted of sale and Herrera of conspiracy to distribute controlled substances. Denial of the motion to dismiss is the main issue on appeal. We reverse.

The facts pertinent to this appeal are not disputed. Both defendants are Southern Ute Indians. The criminal acts occurred in or in the vicinity of a house in the incorporated town of Ignacio, Colorado. Ignacio is located within the boundaries of the Southern Ute Indian Reservation.

The land on which the house is located (the subject property) is a part of the original area set aside by act of Congress for the benefit of the Southern Ute Indian tribe. In 1898, pursuant to an 1895 act of

Congress, 28 Stat. 678, a tract including the subject property was allotted for the use of Charles Shoshone, a Southern Ute Indian. In 1909, under the authority of a 1908 act of Congress, 35 Stat. 444, Shoshone sold this land to a non-Indian. At the time of the alleged criminal incidents, the subject property was apparently owned by one Ophilia Candelaria, ethnic origin unknown.

The town of Ignacio, although within the boundaries of the reservation, is not a dependent Indian community. Only a small percentage of its population is Indian. Like the subject property, most of the real property within the town is privately owned and is taxed by the county and state. The town has operated under the laws of the state, the regulations of the county, and its own municipal ordinances. For many years the Southern Ute Indians have acquiesced to Colorado jurisdiction in Ignacio, and the state and local courts have from time to time tried members of the Southern Ute tribe for offenses committed within the boundaries of the reservation.

From the above facts, the trial court concluded that it had jurisdiction to try the defendants for the offenses charged. Defendants, on appeal, contend that this conclusion was wrong. We agree.

■ As stated in *Whyte v. District Court*, 140 Colo. 334, 346 P.2d 1012 (1959):

"[T]he jurisdiction of the federal government over all Indian affairs is plenary and subject to no diminution by the states in the absence of specific congressional grant of authority to them to act....

"As a corollary to federal sovereignty ... '[i]t is well settled that the state has no power over the conduct of Indians within the Indian country, whether or not the conduct is of special concern to the federal government.' "

*See also* 18 U.S.C. §§ 1151 and 1152; *Cheyenne-Arapaho Tribes v. State*, 618 F.2d 665 (10th Cir.1980).

■ Congress, by Public Law 280, codified, as amended, in 18 U.S.C. § 1162, 25 U.S.C. §§ 1321–1326, and 28 U.S.C. § 1360, provided a way in which a state could assume jurisdiction over Indian country, initially without (1953), and later with (1968), the consent of the tribal members. But Colorado has not taken the necessary action prescribed by Congress to acquire that jurisdiction and its correlative burdens. *Whyte v. District Court, supra.* Therefore, Colorado does not have jurisdiction to try offenses committed by Indians in "Indian country."

The key question here is whether, as contended by defendants, the subject property is in "Indian country." "Indian country" is defined in 18 U.S.C. § 1151 as:

"(a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, *notwithstanding the issuance of any patent*, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." (emphasis supplied)

Subsections (b) and (c) are not applicable here since, as the trial court correctly found, Ignacio is not a "dependent Indian community" and since the original Indian title to the allotment which includes the subject property has been extinguished. However, subsection (a) does apply. *See Solem v. Bartlett*, —— U.S. ——, 104 S.Ct. 60, 78 L.Ed.2d 77 (1984).

■ Once a block of land is set aside for an Indian reservation, then no matter what happens to the title of individual plots within the area, the entire block, including lands held in fee by non-Indians, retains its reservation status and is "Indian country" until Congress explicitly indicates otherwise. *Solem v. Bartlett, supra; Seymour v. Superintendent*, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962); *United States v. Celestine*, 215 U.S. 278, 30 S.Ct. 93, 54 L.Ed. 195 (1909).

■ Diminishment or disestablishment will not be lightly inferred. Congress must "clearly evince an 'intent to change boundaries' before diminishment will be found." *Solem, supra; Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977). "When both an act and its legislative history fail to provide substantial and compelling evidence of a congressional intention to diminish Indian lands, we are bound by our traditional solicitude for the Indian tribes to rule that diminishment did not take place and that the old reservation boundaries survived the opening." *Solem, supra; Mattz v. Arnett*, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 91 (1973).

■ Here, there is nothing in the congressional enactments pertaining to this reservation or in their legislative history which "evince an intent to change boundaries" of this reservation. Allotting reservation land to Indians or allowing conveyances by allottee Indians to non-Indians, as here, does not disestablish land from the reservation. *Seymour v. Superintendent, supra; Beardslee v. United States*, 541 F.2d 705 (8th Cir.1976); *Beardslee v. United States*, 387 F.2d 280 (8th Cir.1967); *United States ex rel. Condon v. Erickson*, 344 F.Supp. 777 (S.D.1972), *aff'd*, 478 F.2d 684 (8th Cir.1973). And "Indian country" status survives even the opening of a reservation to sell and dispose of surplus and unallotted lands for homestead settlement. *Solem, supra; Beardsley* (1976), *supra; Erickson, supra.*

■ We therefore conclude that the subject property has never been disestablished from the Southern Ute Reservation. It is in "Indian country." The state, therefore, lacks jurisdiction to prosecute these Indian defendants.

Because of our disposition of the jurisdiction issue, we do not address Herrera's speedy trial contention.

The judgments of conviction are reversed as to both defendants, and the cause is remanded for dismissal of the information.

SMITH and KELLY, JJ., concur.