NEGONSOTT *v.* SAMUELS, WARDEN, ET AL.

No. 91–5397.   Argued January 11, 1993—Decided February 24, 1993

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, STEVENS, O'CONNOR, KENNEDY, and SOUTER, JJ., joined, and in all but Part II–B of which SCALIA and THOMAS, JJ., joined.

*Pamela S. Thompson* argued the cause and filed a brief for petitioner.

*Robert T. Stephan,* Attorney General of Kansas, argued the cause for respondents. With him on the brief were *John W. Campbell,* Deputy Attorney General, and *Timothy G. Madden,* Special Assistant Attorney General.

*William K. Kelley* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Acting Assistant Attorney General O'Meara, Edwin S. Kneedler,* and *Edward J. Shawaker.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.†

The question presented in this case is whether the Kansas Act, 18 U. S. C. §3243, confers jurisdiction on the State of Kansas to prosecute petitioner, a Kickapoo Indian, for the state-law offense of aggravated battery committed against another Indian on an Indian reservation. We hold that it does.

---

*Briefs of *amici curiae* urging reversal were filed for the Devils Lake Sioux Tribe of the Fort Totten Indian Reservation et al. by *Bertram E. Hirsch;* and for the Iowa Tribe of Kansas and Nebraska et al. by *Melody L. McCoy.*

†JUSTICE SCALIA and JUSTICE THOMAS join all but Part II–B of this opinion.

## I

Petitioner, Emery L. Negonsott, is a member of the Kickapoo Tribe and a resident of the Kickapoo Reservation in Brown County, Kansas. In March 1985, he was arrested by the county sheriff in connection with the shooting of another Indian on the Kickapoo Reservation. After a jury trial in the Brown County District Court, petitioner was found guilty of aggravated battery. Kan. Stat. Ann. § 21–3414 (1988). The District Court set the conviction aside, however, on the ground that the Federal Government had exclusive jurisdiction to prosecute petitioner for the shooting under the Indian Major Crimes Act, 18 U. S. C. § 1153. The Kansas Supreme Court reinstated petitioner's conviction, holding that the Kansas Act conferred jurisdiction on Kansas to prosecute "all crimes committed by or against Indians on Indian reservations located in Kansas." *State* v. *Nioce*, 239 Kan. 127, 131, 716 P. 2d 585, 588 (1986). On remand, the Brown County District Court sentenced petitioner to imprisonment for a term of 3 to 10 years.

Petitioner then filed a petition for a writ of habeas corpus under 28 U. S. C. § 2254, reasserting his claim that Kansas lacked jurisdiction to prosecute him for aggravated battery. The District Court dismissed his petition, 696 F. Supp. 561 (Kan. 1988), and the Court of Appeals for the Tenth Circuit affirmed, 933 F. 2d 818 (1991). The Court of Appeals found the language of the Kansas Act ambiguous as to "whether Congress intended to grant Kansas courts concurrent jurisdiction with federal courts over the crimes enumerated in the [Indian] Major Crimes Act, or whether by the second sentence of the Kansas Act Congress intended to retain exclusive jurisdiction in the federal courts over those specific crimes." *Id.*, at 820–821. After examining the Act's legislative history, however, the Court of Appeals resolved this ambiguity in favor of the first construction, and held that Kansas had jurisdiction to prosecute petitioner for aggra-

vated battery. *Id.*, at 821–823. We granted certiorari to resolve a conflict between the Courts of Appeals, 505 U. S. 1218 (1992),[1] and now affirm.

## II

Criminal jurisdiction over offenses committed in "Indian country," 18 U. S. C. § 1151, "is governed by a complex patchwork of federal, state, and tribal law." *Duro* v. *Reina*, 495 U. S. 676, 680, n. 1 (1990). The Indian Country Crimes Act, 18 U. S. C. § 1152, extends the general criminal laws of federal maritime and enclave jurisdiction to Indian country, except for those "offenses committed by one Indian against the person or property of another Indian." See F. Cohen, Handbook of Federal Indian Law 288 (1982 ed.). These latter offenses typically are subject to the jurisdiction of the concerned Indian tribe, unless they are among those enumerated in the Indian Major Crimes Act. Originally enacted in 1885, the Indian Major Crimes Act establishes federal jurisdiction over 13 enumerated felonies committed by "[a]ny Indian . . . against the person or property of another Indian or other person . . . within the Indian country." § 1153(a).[2] As

---

[1] See *Youngbear* v. *Brewer*, 415 F. Supp. 807 (ND Iowa 1976), aff'd, 549 F. 2d 74 (CA8 1977). In *Youngbear*, the Court of Appeals for the Eighth Circuit upheld a lower court ruling that the State of Iowa lacked jurisdiction to prosecute the Indian defendant under a similarly worded statute conferring jurisdiction on Iowa over offenses committed by or against Indians on certain Indian reservations within the State, see Act of June 30, 1948, ch. 759, 62 Stat. 1161, for conduct punishable as an offense enumerated in the Indian Major Crimes Act, 18 U. S. C. § 1153.

[2] The Indian Major Crimes Act provides in full:

"(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject

the text of § 1153, see n. 2, *supra*, and our prior cases make clear, federal jurisdiction over the offenses covered by the Indian Major Crimes Act is "exclusive" of state jurisdiction. See *United States* v. *John*, 437 U. S. 634, 651 (1978); *Seymour* v. *Superintendent of Washington State Penitentiary*, 368 U. S. 351, 359 (1962); *United States* v. *Kagama*, 118 U. S. 375, 384 (1886).

Congress has plenary authority to alter these jurisdictional guideposts, see *Washington* v. *Confederated Bands and Tribes of Yakima Nation*, 439 U. S. 463, 470–471 (1979), which it has exercised from time to time. This case concerns the first major grant of jurisdiction to a State over offenses involving Indians committed in Indian country, the Kansas Act, which provides in full:

> "Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.
>
> "This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations." Act of June 8, 1940, ch. 276, 54 Stat. 249 (codified at 18 U. S. C. § 3243).

Passed in 1940, the Kansas Act was followed in short order by virtually identical statutes granting to North Dakota and Iowa, respectively, jurisdiction to prosecute offenses com-

---

to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

"(b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense." 18 U. S. C. § 1153.

mitted by or against Indians on certain Indian reservations within their borders. See Act of May 31, 1946, ch. 279, 60 Stat. 229; Act of June 30, 1948, ch. 759, 62 Stat. 1161.

Kansas asserted jurisdiction to prosecute petitioner for aggravated battery under the Kansas Act. Petitioner challenges the State's jurisdiction in this regard. He contends that Congress added the second sentence of the Kansas Act to preserve the "exclusive" character of federal jurisdiction over the offenses enumerated in the Indian Major Crimes Act, and since the conduct resulting in his conviction for aggravated battery is punishable as at least two offenses listed in the Indian Major Crimes Act,[3] Kansas lacked jurisdiction to prosecute him in connection with the shooting incident. According to petitioner, the Kansas Act was intended to confer jurisdiction on Kansas only over misdemeanor offenses involving Indians on Indian reservations. To construe the statute otherwise, petitioner asserts, would effect an "implied repeal" of the Indian Major Crimes Act. Moreover, petitioner continues, the construction adopted by the Court of Appeals below is at odds with the legislative history of the Kansas Act as well as the canon that statutes are to be liberally construed in favor of Indians.

### A

"Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin* v. *Oceanic Contractors, Inc.,* 458 U. S. 564, 570 (1982) (internal quotation marks omitted). In analyzing petitioner's contentions, then, we begin with the text of the Kansas

---

[3] The Indian Major Crimes Act does not explicitly refer to the offense of aggravated battery, but it lists "assault with a dangerous weapon" and "assault resulting in serious bodily injury." 18 U. S. C. § 1153(a). These offenses are defined at 18 U. S. C. §§ 113(c) and (f). We assume, for the sake of deciding this case, that the state-law offense for which petitioner was convicted, Kan. Stat. Ann. § 21–3414 (1988), is comparable to one or both of these federal offenses.

Act itself. The first sentence confers jurisdiction on "Kansas over offenses committed by or against Indians on Indian reservations . . . to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State." § 3243. Standing alone, this sentence unambiguously confers jurisdiction on Kansas to prosecute all offenses—major and minor—committed by or against Indians on Indian reservations in accordance with state law. Petitioner does not assert otherwise. Instead, he rests his case on the second sentence of the Kansas Act, which states that nothing in the Act shall "deprive" federal courts of their "jurisdiction over offenses defined by the laws of the United States." *Ibid.* But the most logical meaning of this proviso, we believe, is that federal courts shall retain their jurisdiction to try all offenses subject to federal jurisdiction under 18 U. S. C. §§ 1152 and 1153, while Kansas courts shall have jurisdiction to try persons for the same conduct when it violates state law.

This interpretation is quite consistent with the first sentence's conferral of jurisdiction on Kansas over all offenses committed by or against Indians on Indian reservations in accordance with state law. The Court of Appeals referred to this state of affairs in terms of Kansas courts having "concurrent jurisdiction" with federal courts over the offenses enumerated in the Indian Major Crimes Act. See 933 F. 2d, at 820–821. But the Kansas Act does not confer jurisdiction on Kansas to prosecute individuals for the federal offenses listed in the Indian Major Crimes Act; it confers jurisdiction to prosecute individuals in accordance with state law for conduct that is also punishable under federal law pursuant to the Indian Major Crimes Act. Strictly speaking, then, federal courts retain their exclusive jurisdiction to try individuals for offenses covered by the Indian Major Crimes Act, and in this sense, the Kansas Act in fact confers only concurrent "legislative" jurisdiction on the State to define and prosecute similar offenses.

Our reading of the Kansas Act is the only one that gives effect "to every clause and word of [the] statute." *Moskal* v. *United States,* 498 U. S. 103, 109–110 (1990) (internal quotation marks omitted). Petitioner's construction of the Act's second sentence renders federal jurisdiction exclusive whenever the underlying conduct is punishable under federal law pursuant to either 18 U. S. C. §§ 1152 or 1153. Kansas is left, then, with jurisdiction over only those minor offenses committed by one Indian against the person or property of another. This result can hardly be reconciled with the first sentence's unqualified grant of jurisdiction to Kansas to prosecute all state-law offenses committed by or against Indians on Indian reservations. Moreover, contrary to the assertion of petitioner, our construction of the Kansas Act does not work an "implied repeal" of the Indian Major Crimes Act. As we have noted, federal courts retain their exclusive jurisdiction to try individuals for major federal crimes committed by or against Indians in Indian country. In any event, to the extent that the Kansas Act altered the jurisdictional landscape, the alteration is not merely by implication: The Act explicitly conferred jurisdiction on Kansas over all offenses involving Indians on Indian reservations.

## B

Although we think resort to secondary materials is unnecessary to decide this case, the legislative history of the Kansas Act supports our construction. Both the House and Senate Reports accompanying the Act consist almost entirely of a letter and memorandum from Acting Secretary of the Interior, E. K. Burlew, to the Chairmen of the House and Senate Indian Affairs Committees, which provide a background account of the forces leading to the enactment of the Kansas Act. See H. R. Rep. No. 1999, 76th Cong., 3d Sess. (1940) (hereinafter H. R. Rep.); S. Rep. No. 1523, 76th Cong., 3d Sess. (1940) (hereinafter S. Rep.). According to Acting Secretary Burlew, in practice, Kansas had exercised jurisdiction over all offenses committed on Indian reservations involving

Indians, "even where the criminal act charged constituted one of the major offenses listed in [the Indian Major Crimes Act]," because such offenses were otherwise left unenforced by the concerned tribes (who were without tribal courts). H. R. Rep., at 4; S. Rep., at 3. The Indian tribes of Kansas did not object to this scheme, but welcomed it. When the authority of the Kansas courts to entertain such prosecutions was called into question, the tribes "expressed a wish that the jurisdiction hitherto exercised by the State courts be continued." H. R. Rep., at 4; S. Rep., at 4. Thus, the Kansas Act was designed to "merely confirm a relationship which the State has willingly assumed, which the Indians have willingly accepted, and which has produced successful results, over a considerable period of years." H. R. Rep., at 5; S. Rep., at 5.[4]

Since Kansas had exercised jurisdiction over offenses covered by the Indian Major Crimes Act, and the Kansas Act was enacted to ratify the existing scheme of *de facto* state jurisdiction over all offenses committed on Indian reservations, it follows that Congress did not intend to retain exclusive federal jurisdiction over the prosecution of major crimes. In view of the experimental nature of the Kansas Act, Congress simply intended to retain jurisdiction over

---

[4] *Amici* Iowa Tribe of Kansas and Nebraska et al. allege that at least one tribe, the Potawatomi Indian Tribe, opposed the Kansas Act. Brief for Iowa Tribe of Kansas and Nebraska et al. as *Amici Curiae* 17. According to *amici*, the Tribe sent a telegram to the Chairman of the House Committee on Indian Affairs, Representative W. Rogers, voicing its opposition to the Act, which was followed by an exchange of several letters. See *id.*, at 17–18. This correspondence is not contained in the reprinted legislative history of the Act, but instead rests in the National Archives. Although one of Chairman Rogers' letters to the Tribe states: "'Your letters are being filed with the House Committee on Indian Affairs,'" *id.*, at 17 (quoting letter of May 10, 1939), we have no way of knowing to what extent, if at all, the Tribe's opposition to the Kansas Act was brought to the attention of other Members of Congress. Therefore, we regard the background account set forth in the House and Senate Reports as conclusive for purposes of discerning Congress' understanding of the forces leading to the introduction of the bill which became the Kansas Act.

offenses already subject to federal jurisdiction under 18 U. S. C. §§ 1152 and 1153 in the event that the Kansas Act did not solve the identified enforcement problem (*i. e.*, in case the State declined to exercise its jurisdiction). This explanation squares with Acting Secretary Burlew's conclusion that, although the Kansas Act's "proposed relinquishment of jurisdiction to the State of Kansas appropriately extends to those offenses which are provided for in existing Federal statutes as well as those which are not," "[t]he prosecution in the Federal courts of those offenses which are now open to such prosecution will not be precluded under the bill in any particular instance where this course may be deemed advisable." H. R. Rep., at 5; S. Rep., at 4.

Petitioner argues that Congress' amendments to the original version of the bill which became the Kansas Act confirm that it did not intend to confer jurisdiction on Kansas over conduct covered by the Indian Major Crimes Act. As originally drafted, the bill provided "[t]hat concurrent jurisdiction is hereby relinquished to the State of Kansas to prosecute Indians and others for offenses by or against Indians or others, committed on Indian reservations in Kansas," and explicitly stated that the Indian Major Crimes Act as well as other statutes granting federal jurisdiction over offenses committed in Indian country "are modified accordingly." 86 Cong. Rec. 5596 (1940). Congress eventually deleted the original bill's reference to "*concurrent* jurisdiction" as well as its reference to the effect of the bill on the Indian Major Crimes Act. Rather than supporting petitioner's construction of the Kansas Act, however, we think these amendments are in accord with our reading of the statute.

The amendments to the original bill were proposed by Acting Secretary Burlew in his letter and memorandum to the committee chairmen in order to reflect more accurately the "legal situation as it now exists or as intended to be created." H. R. Rep., at 3; S. Rep., at 2. He explained:

"The bill proposes to relinquish concurrent jurisdiction to the State of Kansas, intending thereby to give the State jurisdiction of all types of crimes, whether major or minor, defined by State law. However, the Federal Government has exercised jurisdiction only over major crimes. Therefore, strictly speaking, this is not a case of relinquishing to a State a jurisdiction concurrent with that of the United States, but a case of conferring upon the State complete criminal jurisdiction, retaining, however, jurisdiction in the Federal courts to prosecute crimes by or against Indians defined by Federal law." *Ibid.*

Thus, the original bill was amended to make clear that the statute conferred jurisdiction on Kansas over more offenses than were subject to federal jurisdiction under existing federal law, and not, as petitioner suggests, to narrow the category of offenses subject to prosecution in state court to minor offenses excluded from federal jurisdiction under 18 U. S. C. § 1152.

There is no explanation in the legislative history why Congress deleted the original bill's reference to the effect of the statute on the Indian Major Crimes Act and adopted the general language of the second sentence of § 3243 in its place. But we think it is likely that Congress simply thought it preferable to refer generally to the fact that the Act did not "deprive" federal courts of their jurisdiction over offenses defined by federal law, rather than to list the specific statutes pursuant to which the Federal Government had exercised jurisdiction to prosecute offenses committed by or against Indians in Indian country. In any event, to the extent one may draw a negative inference from Congress' decision to delete the specific reference to the effect of the Kansas Act on the Indian Major Crimes Act, we think this is too slender a reed upon which to rest departure from the clear import of the text of the Kansas Act.

## C

Finally, we find petitioner's resort to general principles of Indian law unavailing. Petitioner cites our opinion in *Bryan* v. *Itasca County*, 426 U. S. 373 (1976), for the proposition that "laws must be liberally construed to favor Indians." Brief for Petitioner 11. What we actually said in *Bryan,* was that " 'statutes passed for the benefit of dependent Indian tribes . . . are to be liberally construed, doubtful expressions being resolved in favor of the Indians.' " 426 U. S., at 392 (quoting *Alaska Pacific Fisheries* v. *United States,* 248 U. S. 78, 89 (1918)). Petitioner claims that the Court of Appeals' construction of the Kansas Act harms Indians by eliminating the historically exclusive stewardship of the Federal Government over major crimes committed by Indians in Indian country, and subjecting Indians to the possibility of dual prosecution by state and federal authorities.

It is not entirely clear to us that the Kansas Act is a statute "passed for the benefit of dependent Indian tribes." But if it does fall into that category, it seems likely that Congress thought that the Act's conferral of criminal jurisdiction on the State would be a "benefit" to the tribes in question. We see no reason to equate "benefit of dependent Indian tribes," as that language is used in *Bryan,* with "benefit of accused Indian criminals," without regard to the interests of the victims of these crimes or of the tribe itself. But in any event, for the reasons previously discussed, we think that the Kansas Act quite unambiguously confers jurisdiction on the State over major offenses committed by or against Indians on Indian reservations, and we therefore have no occasion to resort to this canon of statutory construction. See *South Carolina* v. *Catawba Indian Tribe, Inc.,* 476 U. S. 498, 506 (1986).

The judgment of the Court of Appeals is

*Affirmed.*