COMMUNITY TV CORP.

v.

TOWN OF BELMONT AND TOWN OF MEREDITH

April 17, 1996

*Normandin, Cheney & O'Neil,* of Laconia (*Duncan J. Farmer* on the brief and orally), for the plaintiff.

*Nighswander, Martin & Mitchell, P.A.,* of Laconia, and *Peter J. Epstein,* of Boston, Massachusetts (*Walter L. Mitchell* and *Mr. Epstein* on the brief, and *Mr. Epstein* orally), for the defendants.

BRODERICK, J. The defendants, the Towns of Belmont and Meredith (towns), appeal the Superior Court's (*Perkins,* J.) determination that the Cable Communications Policy Act of 1984 and its amendments, 47 U.S.C. §§ 521 *et seq.* (1988 & Supp. 1993) (Cable Act), do not preempt the arbitration provisions in franchise agreements with the plaintiff, Community TV Corp. Alternatively, the towns contend that the trial court erred in identifying applicable criteria for franchise renewal determinations and in limiting appeal rights from arbitration decisions. We affirm.

In 1992, the fifteen-year franchise agreements between each town and the plaintiff expired. The towns extended the agreements until October 1, 1994, while continuing renewal negotiations through and beyond the extension date. The towns made it clear, however, that absent agreement on all outstanding renewal-related issues, no additional extensions would be granted. Resolution was not achieved, and the plaintiff, pursuant to the express provisions of the franchise agreements, invoked the arbitration provisions, which state:

> To ensure continuity of service by the expeditious resolution of any dispute or disagreement in any way arising out of or resulting from this franchise or any claimed breach or material violation of this franchise, or any dispute or disagreement in any way arising out of or resulting from any hearing held pursuant to the provisions of this franchise, such dispute or disagreement shall be submitted to arbitration by a Board of three Arbitrators . . . . All

matters shall be heard *de novo* by the Board of Arbitrators, and the Board shall have final and conclusive authority on all such matters, but it shall not be empowered to depart from or in any way alter the terms of this franchise. . . . This section shall be governed by and construed in accordance with the laws and statutes of the State of New Hampshire and particularly, but without limitation, Chapter 542 of the Revised Statutes Annotated, 1955, as amended, and if and to the extent that anything herein is inconsistent therewith or anything required thereby is omitted herefrom, the provisions of the applicable laws shall govern, and the omission shall be deemed supplied. Neither party shall have the right to bring any legal proceedings against the other, save only as expressly authorized in and for the purposes specifically set forth in the said Chapter 542 with respect to agreements to arbitrate, arbitration proceedings and arbitrators' awards.

The towns refused to arbitrate on the basis that the arbitration requirement was not applicable to the ongoing renewal process. The plaintiff disagreed and filed suit to determine and enforce its rights under the franchise agreements.

Before the superior court, the towns argued that the arbitration provisions of the franchise agreements were preempted and superseded by the Cable Act. The court disagreed and ordered the towns to submit to arbitration. This appeal followed.

The towns primarily assert, as they did below, that the Cable Act preempts the use of arbitration to resolve disputes between cable operators and franchising authorities, including disputes concerning franchise renewal. The Cable Act provides that "any provision of any franchise granted by [a franchising] authority[] which is inconsistent with this chapter shall be deemed to be preempted and superseded." 47 U.S.C. § 556(c) (1988). A provision will be deemed inconsistent if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Town of Norwood v. Adams-Russell Co.*, 549 N.E.2d 1115, 1117 (Mass. 1990) (quotation omitted); *see Wenners v. Great State Beverages, Inc.*, 140 N.H. 100, 104, 663 A.2d 623, 626 (1995), *cert. denied*, 116 S. Ct. 926 (1996).

One purpose of the Cable Act is to "establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter." 47 U.S.C. § 521(5) (1988). To this end, the statute

creates two avenues for franchise renewal: a formal renewal process, *see* 47 U.S.C. § 546(a)-(g) (1988 & Supp. 1993), and an informal process, *see* 47 U.S.C. § 546(h) (1988). The formal renewal process allows either a cable operator or a franchising authority to trigger prescribed procedures for franchise renewal during a six-month period beginning three years prior to the expiration date of a franchise agreement. *See* 47 U.S.C. § 546(a). In this case, the court below correctly found that the formal renewal process had not been invoked, and the towns do not challenge this finding; the requirements of the formal renewal process, therefore, are not at issue in this appeal.

■ In contrast, the informal renewal process allows cable operators to seek franchise renewal through "alternative renewal procedures":

> Notwithstanding the provisions of subsections (a) through (g) of this section, a cable operator may submit a proposal for the renewal of a franchise pursuant to this subsection at any time, and a franchising authority may, after affording the public adequate notice and opportunity for comment, grant or deny such proposal at any time . . . . The provisions of subsections (a) through (g) of this section shall not apply to a decision to grant or deny a proposal under this subsection.

47 U.S.C. § 546(h). This subsection imposes only two requirements on informal renewals: the cable operator must submit a proposal for renewal, and the franchising authority must afford the public adequate notice and an opportunity for comment before granting or denying the proposal.

■ In view of this informal renewal process, we are not persuaded that the franchise agreement's arbitration provisions are inconsistent with the terms of the Cable Act. When Congress has expressed its will "in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 113 S. Ct. 1119, 1123 (1993) (quotation omitted). By explicitly permitting "alternative renewal procedures," Congress plainly contemplated that cable operators would seek renewal through means other than those specified in the statute. Indeed, nothing in the Cable Act precludes arbitration as an alternative renewal procedure: arbitration is neither expressly nor impliedly prohibited by any provision of the Cable Act, and the limited requirements of informal renewal can be accommodated through arbitration.

■■ The towns' categoric assertion that arbitration is somehow inconsistent with the informal renewal because it will create "a different, non-standardized renewal process" assumes a statutory mandate that does not exist. The Cable Act does not specify any particular scheme or mechanism for informal renewal. Rather, its focus is on "orderly process." *See* 47 U.S.C. § 521(5). The towns have suggested no reason why arbitration, as described in the franchise agreements, would not accomplish this purpose in a proper and expeditious manner. Accordingly, the arbitration provisions are not inconsistent with, and therefore not preempted by, the Cable Act.

The towns further contend that the franchise agreements and the Cable Act are inconsistent because the former mandate appeals to arbitrators from adverse renewal decisions while the latter permits cable operators to appeal to a state or federal court. *See* 47 U.S.C. § 555(a) (1988 & Supp. 1993). This argument misapprehends the cooperative interplay between the "judicial proceedings" section of the Cable Act and the arbitration provisions in the franchise agreements.

■ The Cable Act permits "[a]ny cable operator adversely affected by any final determination made by a franchising authority . . . [to] commence an action within 120 days after receiving notice of such determination. . . ." *Id.* In other words, once a "final determination" has been made, a cable operator may appeal to a court of competent jurisdiction. Arbitration, under the franchise agreements, is merely the method, mutually adopted by the parties, to arrive at a "final determination." Though the towns could have retained the right to make "final determinations," they chose to delegate that authority to a panel of arbitrators. Once a decision is made by the panel, the affected cable operator may file an appeal with an appropriate court. Arbitration is thus not an alternative to a court appeal but a precursor to judicial review. Nothing in this arrangement is inconsistent with the preemptive reach of the federal statute.

In their appeal, the towns also raised several incidental arguments in support of preemption. Because these arguments are duplicative, insubstantial, or rendered inapposite in light of the foregoing discussion, we find them to be without merit and decline to address them. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993). We turn next to the towns' exceptions to the arbitration itself.

■ The towns assert that the trial court failed to identify the correct criteria to govern the arbitrators' deliberations on the

plaintiff's renewal proposals. They believe the criteria outlined in the Cable Act, *see* 47 U.S.C. § 546(a)-(g), should control. As noted above, however, because the parties have pursued an alternative renewal procedure, the dictates of the formal renewal process are specifically inapplicable to this arbitration. *See* 47 U.S.C. § 546(h).

■ For its part, the plaintiff suggests that the trial court was correct in its determination that the criteria identified in New Hampshire's cable television statute, RSA 53-C:3-a (1991), control. We agree, as that statute sets forth eight factors to be considered in the "grant [of a] franchise for cable service," RSA 53-C:3-a, I-VIII, and it defines "franchise" as "an initial or *renewed* authorization issued by a franchising authority," RSA 53-C:1, III (1991) (emphasis added). Naturally, to the extent the franchise agreements themselves contain standards or criteria for renewal, they should also be considered.

Finally, the towns argue that the trial court erred in ruling that the plaintiff can appeal the arbitrators' decision but that the towns cannot. While the court properly ruled that a cable operator can appeal to a State or federal court from an adverse renewal decision, under formal or informal renewal procedures, it made no comparable finding, one way or the other, with respect to the towns. This issue will, therefore, be addressed briefly.

■ The Cable Act clearly provides that franchising authorities are not vested with appeal rights from renewal decisions, stating that "[a]ny *cable operator* adversely affected by any final determination . . . may commence an action . . . ." 47 U.S.C. § 555(a) (emphasis added). This is logical, given that it is the final determination of the franchising authority itself which would be the subject of an appeal. The fact that the towns agreed to use arbitration as the method of achieving a final determination does not create an appeal right where none would have existed had they reserved final determinations to themselves. Further, both the plaintiff and the towns may appeal the arbitrators' decision pursuant to New Hampshire law governing arbitration. *See* RSA 542:8-:10 (1974). Should the plaintiff be adversely affected by the outcome of that action, it would still have recourse to an appeal under the Cable Act.

*Affirmed.*

All concurred.