**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.                                                          No. 97-1442

STEVE A. BURCH,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. Nos. 97-WY-1508-CB & 93-CR-249-CAB)

Submitted on the briefs:

Henry L. Solano, United States Attorney, Andrew A. Vogt, Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

Steve A. Burch, pro se.

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

**MURPHY** , Circuit Judge.

Defendant-appellant Steve A. Burch appeals the district court's denial of

his application for a writ of habeas corpus, which was construed as a motion to

vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Because defendant has shown an unresolved factual question regarding the United States' jurisdiction over this case, and the government's evidence is insufficient to permit us to take judicial notice of where the offense was committed, we vacate the judgment and remand the case for further proceedings. [1]

Defendant is an enrolled member of the Southern Ute Indian Tribe. On August 4, 1993, defendant was indicted by a federal grand jury for the crime of manslaughter, in connection with the death of an infant which occurred in the Meadowbrook Trailer Park, space #39, in Ignacio, Colorado. The town of Ignacio is located entirely within the boundaries of the Southern Ute Indian Reservation. After a jury trial, defendant was convicted and sentenced to seventy-nine months' incarceration. His conviction was affirmed by this court in United States v. Burch, No. 94-1293, 1995 WL 94653 (10th Cir. Feb. 28, 1995) (unpublished order and judgment).

In July 1997, defendant filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging the United States lacked subject matter jurisdiction over the crime for which he was convicted. Because the petition

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

attacked the validity of defendant's underlying conviction, it was construed as a motion pursuant to 28 U.S.C. § 2255. The government's response relied on defendant's stipulation that the crime occurred within the exterior boundaries of the Southern Ute Indian Reservation to establish federal jurisdiction over the charged crime pursuant to the Indian Major Crimes Act, 18 U.S.C. § 1153(a). In defendant's reply, he clarified for the first time that his challenge to federal jurisdiction rested upon the operation of Public Law 98-290, § 5, which granted the State of Colorado criminal and civil jurisdiction within the boundaries of the town of Ignacio, Colorado. See Pub. L. No. 98-290, 98 Stat. 201 (1984), set out in the Historical and Statutory Notes following 25 U.S.C. § 668. The district court denied defendant's motion because the crime occurred within the boundaries of the Southern Ute Indian Reservation and thus was within the exclusive jurisdiction of the United States pursuant to the Indian Major Crimes Act.

On appeal, defendant argues that the State had exclusive jurisdiction over the offense because it occurred in Ignacio, Colorado, and therefore the United States lacked jurisdiction to try him under the Indian Major Crimes Act. The government argues that (1) notwithstanding the provisions of Public Law 98-290, the fact that the offense was committed by an Indian in Indian country gave the United States exclusive jurisdiction pursuant to the Indian Major Crimes Act; (2) Colorado never took the steps necessary to assume jurisdiction over Indians

in Indian country pursuant to 25 U.S.C. § 1321(a); and (3) even if Colorado has jurisdiction over offenses committed within the town of Ignacio, the offense in this case was committed outside the town boundaries.

Challenges to a district court's subject matter jurisdiction may be raised at any time, including in a § 2255 motion for collateral review of a federal conviction. See United States v. Cuch, 79 F.3d 987, 990 (10th Cir. 1996). Subject matter may not be conferred on a federal court by stipulation, estoppel, or waiver. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). We review jurisdictional issues de novo. See Cuch, 79 F.3d at 990.

"Criminal jurisdiction over offenses committed in 'Indian country,' 18 U.S.C. § 1151, is governed by a complex patchwork of federal, state, and tribal law." Negonsott v. Samuels, 507 U.S. 99, 102 (1993) (quotations omitted). Historically, based on principles of federal preemption and Indian sovereignty, "criminal offenses by or against Indians have been subject only to federal or tribal laws, except where Congress in the exercise of its plenary and exclusive power over Indian affairs has expressly provided that State laws shall apply." Washington v. Confederated Bands & Tribes of the Yakima Indian Nation, 439 U.S. 463, 470-71 (1979) (quotation and citation omitted). In this case, we

must examine the relationship between the Indian Major Crimes Act, codified at 18 U.S.C. § 1153, and several public laws which were enacted subsequently.

The Indian Major Crimes Act was enacted in 1885 to establish exclusive federal jurisdiction over certain enumerated felonies committed by "[a]ny Indian . . . against the person or property of another Indian or other person . . . within the Indian country." Id. § 1153(a). "Indian country" is defined to include, *inter alia*, "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." Id. § 1151(a). The crime for which defendant was convicted, manslaughter, is one of the offenses enumerated in the Act. See id. § 1153(a).

In 1953, Congress enacted Public Law 280, ch. 505, 67 Stat. 588 (1953), which conferred upon certain states, known as the "mandatory states," criminal jurisdiction over offenses committed by or against Indians in identified portions of Indian country. See 18 U.S.C. § 1162. The law provided that § 1152 (enclave jurisdiction) and § 1153 (major crimes jurisdiction) would not apply to the areas of Indian country identified in the statute. See id. § 1162(c). The statute also gave the option to other states to assume jurisdiction over Indian country by affirmative legislative action. See § 7 of Pub. L. No. 280, 67 Stat. at 590, repealed by Pub. L. No. 90-284, § 403(b), 82 Stat. 79 (1968). This law was amended in 1968 to omit the requirement of affirmative legislative action and to

require the consent of the Indian tribe by special election before a state could assume jurisdiction. See Pub. L. No. 90-284, §§ 401(a), 406, 82 Stat. 78, 80 (1968), codified at 25 U.S.C. §§ 1321(a), 1326. Colorado was not one of the states originally identified in Public Law 280, and, prior to 1984, had not assumed criminal jurisdiction in Indian country through the necessary procedures. See People v. Luna, 683 P.2d 362, 363-65 (Colo. Ct. App. 1984) (holding State did not have criminal jurisdiction over offenses committed by Indians in Ignacio, Colorado, because it had not taken the action necessary to assume jurisdiction under Public Law 280).

In May 1984, six weeks after the Luna decision, Congress enacted Public Law 98-290, which represented a negotiated agreement between "[t]he Southern Ute Indian Tribe and the State of Colorado, together with the involved local governments." 130 Cong. Rec. 10,290 (1984). Section 5 of the law provides

> The State of Colorado shall exercise criminal and civil jurisdiction within the boundaries of the town of Ignacio, Colorado, and any other municipality which may be incorporated under the laws of Colorado within the Southern Ute Indian Reservation, as if such State had assumed jurisdiction pursuant to the Act of August 15, 1953 (67 Stat. 588), as amended by the Act of April 11, 1968 (82 Stat. 79).

Pub. L. No. 98-290, § 5, 98 Stat. at 202. The question in this case, then, is whether Public Law 98-290 removed from the United States jurisdiction over Indian Major Crimes Act offenses committed in the town of Ignacio.

In construing Public Law 98-290, "[o]ur task is to give effect to the will of Congress." Negonsott, 507 U.S. at 104 (quotation omitted). Based on both the language of Public Law 98-290 and its legislative history, we conclude that Congress intended to bestow upon the State of Colorado exclusive jurisdiction over the offenses described in the Indian Major Crimes Act, if committed within the boundaries of the town of Ignacio.

Public Law 98-290 provides that Colorado's exercise of jurisdiction should be "as if" the state had assumed jurisdiction pursuant to Public Law 280, as amended. Public Law 280, in turn, grants the named states exclusive jurisdiction over offenses occurring in identified portions of Indian country, expressly stating that the Indian Major Crimes Act does not apply to those areas. See Pub. L. No. 280, § 2, 67 Stat. at 589 (codified at 18 U.S.C. § 1162(c)); see also United States v. Hoodie, 588 F.2d 292, 294-95 (9th Cir. 1978) (vacating federal conviction because exclusive jurisdiction granted to states under Public Law 280). We see no reason why this provision would not apply to vest Colorado with exclusive jurisdiction over the town of Ignacio. Cf. United States v. Felter, 546 F. Supp. 1002, 1017 (D. Utah 1982) ("Had Utah chosen to accept jurisdiction over the Ute reservation [pursuant to Pub. L. 280], its authority–and the limits thereon–would have been identical to those of Wisconsin or other 'mandatory' states."), aff'd, 752 F.2d 1505 (10th Cir. 1985). But see United States v. High Elk, 902 F.2d 660,

660 (8th Cir. 1990) (per curiam) (holding, without discussion, that the Indian Major Crimes Act was repealed only in those states originally identified in Public Law 280).

This conclusion is buttressed by statements made both in the House and Senate Reports and in introducing the bill on the House floor. The House Report for Public Law 98-290 states

> H.R. 4176 would eliminate . . . uncertainty by confirming the boundaries of the reservation and by clarifying the criminal jurisdiction of the Federal Government, the State government, and the tribe. Under the terms of the bill, the United States and the tribe would retain their existing criminal and civil jurisdiction over Indians *anywhere within the boundaries of the reservation except within the limits of any municipality incorporated under the laws of the State of Colorado, in which case, the State would exercise criminal and civil jurisdiction over all persons*, Indian and non-Indian, as if it had assumed such jurisdiction pursuant to the provision of Public Law 83-280.

H.R. Rep. No. 98-716, at 2 (1984) (emphasis added). The Senate Report states

> Within the town of Ignacio, which lies within the reservation, the State and town shall have jurisdiction as if jurisdiction had been assumed under Public Law 83-280. *Within the remainder of the reservation, the tribal and Federal law shall be applicable to Indians* who are members of a federally recognized Indian tribe anywhere within the boundaries of the reservation.

S. Rep. No. 98-404, at 1 (1984) (emphasis added). In describing the bill to the House of Representatives, Congressman Young reiterated that the United States and the tribe would retain their existing criminal and civil jurisdiction over Indians anywhere within the boundaries of the reservation *"except within the*

-8-

*limits of incorporated municipalities where State jurisdiction would be exercised over all parties.* " 130 Cong. Rec. 10,290 (1984) (emphasis added).

The Supreme Court's decision in <u>Negonsott</u>, 507 U.S. at 105, holding that the federal courts retained jurisdiction to prosecute Indians under the Indian Major Crimes Act even after criminal jurisdiction had been granted to the State of Kansas, does not require a contrary result. There, the Court was construing the effect of the Kansas Act, codified at 18 U.S.C. § 3243, which expressly stated that the grant of state jurisdiction "shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations." Here, in contrast, the jurisdiction granted by Public Law 98-290 to the State of Colorado contains no such reservation of federal jurisdiction.

Further, because Congress directly granted to Colorado jurisdiction over the town of Ignacio, the State was not required to take further action to assume jurisdiction. State jurisdiction over offenses committed by or against Indians in Indian country may be obtained in one of two ways: (1) by a direct congressional grant; or (2) by a state's assumption of optional jurisdiction pursuant to Public Law 280. <u>See Ross v. Neff</u>, 905 F.2d 1349, 1352 (10th Cir. 1990).

A direct congressional grant of jurisdiction over Indian country does not require any further action to vest the state with jurisdiction unless state law itself

prevents the state from exercising such jurisdiction. See, e.g., Yakima Indian Nation, 439 U.S. at 471-72 (explaining that direct jurisdictional grant to mandatory states "effected an immediate cession of criminal and civil jurisdiction over Indian country" to those states); People v. Miranda, 165 Cal. Rptr. 154, 155-56 (Cal. Ct. App. 1980) (holding congressional grant of jurisdiction over Indian country vested California with jurisdiction without requiring state to enact enabling legislation). Upon cession of such jurisdiction to a state, federal law no longer preempts the state's exercise of its inherent police power over all persons within its borders, and the state is automatically vested with jurisdiction in the absence of state law to the contrary. See Anderson v. Gladden, 293 F.2d 463, 467-68 (9th Cir. 1961) (holding no affirmative action required by State of Oregon to assume jurisdiction over Indians in Indian country once such jurisdiction was granted directly by Congress, deferring to Oregon's determination in Anderson v. Britton, 318 P.2d 291, 297-300 (Or. 1957), that state had inherent police power over Indians in Indian country once federal preemption removed); Robinson v. Wolff, 349 F. Supp. 514, 520 (D. Neb. 1972) (holding nothing in Public Law 280 required acceptance by state when jurisdiction granted directly, deferring to state determination in Robinson v. Sigler, 187 N.W.2d 756, 759 (Neb. 1971), that state law did not require affirmative action to accept return of inherent jurisdiction over Indians and Indian country), aff'd, 468 F.2d 438 (8th Cir. 1972).

-10-

Here, Colorado's admission into the Union invested it with criminal jurisdiction over its citizens "throughout the whole of the territory within its limits, including the Ute Reservation." United States v. McBratney, 104 U.S. 621, 624 (1881). No Colorado statute or constitutional provision precludes it from exercising jurisdiction over Indians in Indian country. See, e.g., Arizona v. San Carlos Apache Tribe, 463 U.S. 545, 561-62 (1983) (noting absence of jurisdictional disclaimers in Colorado Enabling Act, in contrast to most western states). Thus, upon enactment of Public Law 98-290, Congress removed any federal bar to Colorado's exercise of its criminal jurisdiction over offenses committed by or against Indians within the town of Ignacio, and the State was not required to take further action to invest itself with such jurisdiction. The cases cited by the government, requiring positive state action to obtain jurisdiction over offenses committed by or against Indians in Indian country, address assumptions of optional jurisdiction under Public Law 280, and do not apply here. See United States v. Baker, 894 F.2d 1144, 1146 (10th Cir. 1990); United States v. Burnett, 777 F.2d 593, 597 (10th Cir. 1985); Luna, 683 P.2d at 364. Based on the foregoing, we conclude that when the offense underlying defendant's conviction occurred, the United States no longer had Indian Major Crimes Act jurisdiction over offenses committed in the town of Ignacio.

We turn, then, to the government's third argument in support of its jurisdiction. The government argues that the designation "Ignacio, Colorado," was simply a mailing address, and that the offense actually occurred outside the boundaries of the incorporated town. In support of its argument, the government has submitted an affidavit by the Assessor of the County of La Plata certifying that the Meadowbrook Trailer Park is located outside the boundaries of the town of Ignacio, with attached photocopies of a tax record and a portion of a map. The government has asked us to take judicial notice that the offense occurred outside the boundaries of the town of Ignacio, and that, therefore, the United States had jurisdiction over the offense pursuant to the Indian Major Crimes Act.

Judicial notice may be taken at any time, including on appeal. See Mills v. Denver Tramway Corp., 155 F.2d 808, 812 (10th Cir. 1946) (holding appellate court has discretion to take judicial notice for the first time). A fact may be judicially noticed if it is not subject to reasonable dispute because it is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Whether an offense occurred within particular geographical boundaries is an appropriate subject for judicial notice. See Government of the Canal Zone v. Burjan, 596 F.2d 690, 693-95 (5th Cir. 1979) (taking judicial notice of

-12-

government maps to determine whether charged offenses occurred within boundaries of Canal Zone); United States v. Lossiah, 537 F.2d 1250, 1251 (4th Cir. 1976) (approving trial court's taking of judicial notice that town was within Cherokee Indian Reservation); see also United States v. Stands, 105 F.3d 1565, 1575 (8th Cir.) ("[G]iven a particular piece of land, it is for the court, not the jury, to determine whether that land is in Indian country."), cert. denied, 118 S. Ct. 120 (1997). The sources provided to the court in this case, however, do not permit us to take such notice.

Although official government maps are generally an acceptable source for taking judicial notice, see Government of the Canal Zone, 596 F.2d at 694, we have not been provided such a map. Instead, we have been provided a photocopy of a portion of a map of some place, with a handwritten identification of the place as the "City of Ignacio," a hand drawn city boundary, and a handwritten notation that the subject property is outside the city limits. This is not a source whose accuracy cannot reasonably be questioned. Further, because the map, without the notations, does not show the boundaries of the town of Ignacio or the location of the Meadowbrook Trailer Park, the facts sought to be noted are not readily determinable from the map.

Moreover, given the record allegations that the offense was committed in Ignacio, Colorado, the county assessor's hearsay affidavit cannot be considered

-13-

a source whose accuracy is beyond reasonable question.     <u>See, e.g.</u>, 21 Charles A. Wright & Kenneth W. Graham, Jr.,     <u>Federal Practice and Procedure</u>, § 5108, at 514 (1977) (noting that a person cannot be source of indisputable accuracy under Rule 201(b)(2));  <u>Association Against Discrimination in Employment, Inc. v. City of Bridgeport</u>, 647 F.2d 256, 277-78 (2d Cir. 1981) (holding photocopies of employment roster and affidavit explaining significance of pages were not sources of information whose accuracy could not be questioned, and could not support judicial notice of city's use of federal funds);     <u>Groundhog v. Keeler</u>, 442 F.2d 674, 681 (10th Cir. 1971) (noting, in dicta, inappropriateness of taking judicial notice of affidavit contents to contradict allegations in complaint).

To determine whether the United States had jurisdiction to charge and try defendant, this case must be remanded for further proceedings.  The district court is instructed to determine whether the offense for which defendant was convicted occurred inside or outside the boundaries of the town of Ignacio.  If the court intends to determine this issue by judicial notice, defendant must be given an opportunity to be heard pursuant to Federal Rule of Evidence 201(e).

The government's motion to supplement the record is denied.  The judgment of the United States District Court for the District of Colorado is VACATED, and the case is REMANDED for further proceedings.