**NORFOLK AND WESTERN RAILWAY CO., Plaintiff,**

v.

**UNITED STATES et al., Defendants.**

Slip Op. 94–16.
Court No. 92–10–00653.

United States Court of
International Trade.

Feb. 1, 1994.

Bodman, Longley & Dahling, Carson C. Grunewald and Dennis J. Levasseur, Detroit, MI, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of the U.S., David M. Cohen, Director, Commercial Litigation Branch, Civ.Div., U.S. Dept. of Justice, Marc E. Montalbine (Lars E. Hjelm, Attorney–Advisor, Office of Chief Counsel, U.S. Customs Service, of Counsel), Washington, DC, for defendants.

OPINION

CARMAN, Judge:

Plaintiff and defendant cross move for summary judgment pursuant to USCIT R. 56. Plaintiff brought this action seeking judicial review of a decision by the Chief of the Carrier Ruling Branch, United States Customs Service (Customs), denying plaintiff's protest on the grounds that plaintiff did not file its protest with the proper Customs offi-

cer in accordance with 19 U.S.C. § 1514(c) (1988) and 19 C.F.R. § 174.12(d) (1991). Plaintiff filed its protest to contest the assessment of user fees on railroad cars plaintiff enters into the United States from Canada. Plaintiff bases jurisdiction on 28 U.S.C. § 1581(i)(2), (4) (1988) and, in the alternative, on 28 U.S.C. § 1581(a) (1988).

## I. BACKGROUND

### A. *User Fee Statutory Scheme*

In 1985, Congress authorized Customs to collect certain user fees on, among other things, vehicles and vessels entering the United States. *See* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, § 13031, 100 Stat. 82, 308–10 (codified as amended at 19 U.S.C. § 58c (1988 & Supp. II 1990)) (1985 Act). The 1985 Act established a $5.00 fee for each railroad car entered into the United States and a $397.00 fee for commercial vessels weighing at least 100 tons. *Id.* § 13031(a)(1), (a)(3), 100 Stat. at 308. The Act also limited to $100.00 the amount of total user fees that Customs could collect in a calendar year for an individual railroad car. *Id.* § 13031(b)(3) (codified as amended at 19 U.S.C. § 58c(b)(3)). In addition, the Act excluded ferries from the $397.00 commercial vessel user fee by providing "[t]he term 'vessel' does not include any ferry." *Id.* § 13031(c)(1), 100 Stat. at 309.

In 1986, Congress amended the user fee provisions. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, § 1893, 100 Stat. 2085, 2927–28 (codified as amended at 19 U.S.C. § 58c (1988 & Supp. II 1990)) (1986 Act). The 1986 Act increased the railroad car user fee from $5.00 to $7.50 and modified the $397.00 commercial vessel fee by establishing a $100.00 fee for "barge[s] or other bulk carrier[s] from Canada or Mexico." *Id.* § 1893(a)(1)(B), (a)(3), 100 Stat. at 2927 (codified at 19 U.S.C. § 58c(a)(3), (a)(8)). The 1986 Act also limited to $1500.00 the total amount of user fees that Customs could collect in a calendar year for an individual barge or other bulk carrier. *Id.* § 1893(b)(1) (codified at 19 U.S.C. § 58c(b)(6)).

The most significant aspect of the 1986 Act for purposes of this action is its treatment of railroad cars. Specifically, the Act prohibited user fees for ferries and for railroad cars "that [are] being transported, at the time of arrival, by any vessel that is not a ferry." *Id.* § 1893(b)(1), (b)(3), 100 Stat. at 2927 (codified at 19 U.S.C. § 58c(b)(1)(C), (b)(7)). The Act's legislative history, however, expressly indicates railroad cars transported by ferries that are exempt from fees would nevertheless be subject to user fees. H.R.CONF.REP. No. 841, 99th Cong., 2d Sess. II–855 (1986), *reprinted in* 1986 U.S.C.C.A.N. 4075, 4943.

The 1986 Act also expanded the definition of the term "ferry" and provided a separate definition for the terms "barge or other bulk carrier." The 1986 Act defined these terms as follows:

(1) The term "ferry" means any vessel which is being used—

(A) to provide transportation only between places that are no more than 300 miles apart, and

(B) to transport only—

(i) passengers, or

(ii) vehicles, or railroad cars, which are being used, or have been used, in transporting passengers or goods.

. . . .

(5) The term "barge or other bulk carrier" means any vessel which—

(A) is not self-propelled, or

(B) transports fungible goods that not packaged in any form.

*Id.* § 1893(b)(4)(A), (B), 100 Stat. at 2928 (codified at 19 U.S.C. § 58c(c)(1), (5)).

### B. *The Protest*

At the time Congress enacted the foregoing statutes, plaintiff was transporting railroad cars on barges into the United States from Canada. As a result, in 1986, plaintiff paid a $7.50 user fee for each railroad car that plaintiff transported into the United States across the Detroit River from Canada to Detroit, Michigan.

Prompted by the 1986 Act's revised treatment of railroad cars transported into the

United States by vessels other than ferries,[1] plaintiff filed a user fee refund request with the Secretary of the Treasury on November 20, 1986. Pl's Ex. C. In its request, plaintiff indicated each of its barges was not a ferry that would be exempt from user fees. *Id.* at 1. Plaintiff also claimed each barge was subject to user fees up to the $1500.00 limit per calendar year under 19 U.S.C. § 58c(b)(6). *Id.* Because the barges were not ferries and were subject to user fees, plaintiff sought a refund of user fees it had paid on the railroad cars to the extent such fees exceeded the $1500.00 maximum owed on each barge.[2] *Id.* As plaintiff operated four barges, it claimed a refund for amounts paid in excess of $6000.00. *Id.* at 2. Pursuant to its request, plaintiff received a refund amounting to $16,825.00. Pl's Ex. E. After plaintiff sought its refund and until August 1991, plaintiff paid a $1500.00 user fee for each of its barges and no fees on railroad cars.

On August 28, 1991, the Director of Customs' Office of Regulatory Audit, William F. Inch, informed plaintiff it was required to pay the user fee of $7.50 for each of the railroad cars, but no fees for its barges. Pl's Ex. F. The rationale that Customs provided for its decision was that plaintiff's barges were " 'ferries' for purposes of the user fee statute notwithstanding their apparent qualifications as 'barges' under 19 U.S.C. § 58c(c)(5)." *Id.* Because Customs considered the barges to be ferries under 19 U.S.C. § 58c(c)(1), Customs determined plaintiff was not entitled to the user fee exemption contained in 19 U.S.C. § 58c(b)(7) for railroad cars "transported ... by any vessel that is not a ferry." *Id.* at 1–2.

On November 15, 1991, plaintiff filed a protest against Customs' decision to assess the $7.50 railroad car user fee. Pl's Ex. H. Plaintiff addressed its protest to Mr. Inch in his capacity as the Director of Customs Office of Regulatory Audit and filed the protest with Mr. Inch at Customs Headquarters in Washington, D.C. *Id.* In its protest, plaintiff indicated the user fees were a "charge or exaction" under 19 U.S.C. § 1514(a)(3) (1988) and, therefore, Mr. Inch's decision to assess such fees was subject to protest. *Id.* at 4. The essence of plaintiff's protest was that Customs incorrectly concluded plaintiff's barges were "ferries" under 19 U.S.C. § 58c(c)(1).. *Id.* at 5. Plaintiff argued its vessels were "barges" within the meaning of 19 U.S.C. § 58c(c)(5) because the vessels were pulled by tug boats and are thus not self-propelled. *Id.* at 9. In addition, plaintiff asserted Customs' interpretation of the terms "ferry" and "barge" improperly "read the term 'barge' out of section 58c when those barges carry railroad cars" and thereby contravened Congress' purpose in establishing the user fees. *Id.* at 10. In sum, plaintiff urged it was only liable for a $1500.00 annual user fee for each barge rather than a $7.50 fee for each railroad car. *Id.* at 5.

On April 17, 1992, Customs denied plaintiff's protest in a letter written by the Chief of Customs' Carrier Rulings Branch, Mr. B. James Fritz. Pl's Ex. I. Mr. Fritz characterized the issue upon which Customs based its protest denial as follows: "Whether a protest filed directly with Customs Headquarters is properly filed pursuant to 19 U.S.C. § 1514 and regulations promulgated pursuant thereto." *Id.* at 2. Mr. Fritz indicated Customs' regulations require parties to file protests with "the district director whose decision is being protested unless the protest is being filed at a port other than the district headquarters," in which case parties should file with the port director. *Id.* (citing 19 C.F.R. § 174.12(d)). The letter concluded plaintiff's protest was "invalid" and "need not be considered on its merits" because plaintiff filed it "with the Office of Regulatory Audit in Customs Headquarters" rather than with "the district director whose decision is being protested." *Id.* The letter also stated the

---

1. The 1986 Act prohibited user fees, in part, on railroad cars transported by vessels that are not ferries. 19 U.S.C. § 58c(b)(7).

2. Implicit in plaintiff's request to Customs was plaintiff's understanding that the railroad cars it entered into the United States were exempt from fees by operation of 19 U.S.C. § 58c(b)(7), which bars fees on "railroad car[s] ... that [are] being transported, at the time of the arrival, by any vessel that is not a ferry."

protest "is denied for failure to file with the proper Customs officer." *Id.*

On May 19, 1992, plaintiff wrote Mr. Fritz in order to ask Customs to reconsider its denial of plaintiff's protest. Pl.'s Ex. J. In its request for reconsideration, plaintiff reiterated the substantive arguments it had made in its original protest on November 15, 1991. *Id.* at 2–5. With respect to Mr. Fritz's reasons for denying plaintiff's protest, plaintiff maintained "there was no 'district director' with whom to file a protest" and, therefore, filing with "the Customs official who issued a decision or whose decision is being protested" was proper. *Id.* at 6. Before Customs responded to plaintiff's request for reconsideration, plaintiff filed this action in the Court of International Trade (CIT) on October 2, 1992.

## II. Contentions of the Parties

### A. *Plaintiff*

In its papers before this Court, plaintiff renews the arguments it made to Customs in its protest and request for reconsideration. Specifically, plaintiff claims Customs' interpretation of the statutory definitions of the terms "barge" and "ferry" is erroneous. Pl's Br. at 12–17. In sum, because Congress separately defined each term, plaintiff urges Congress intended the two definitions to be mutually exclusive. *Id.* at 13–15. Therefore, according to plaintiff, a vessel which satisfies the definition of a "ferry" can not also fall under the definition of a "barge." *Id.* As its vessels are not self-propelled, plaintiff argues they are barges within the meaning of § 58c(c)(5) and cannot be "ferries" under § 58c(c)(1). *Id.* In addition, plaintiff asserts Customs' interpretation improperly circumvents the limitation on user fees for railroad cars under § 58c(b)(7). *Id.* at 15–17.

### B. *Defendant*

Similar to plaintiff, defendant's papers adopt the position taken by Customs in the administrative proceedings below. While defendant acknowledges plaintiff's vessels are not self-propelled and qualify as "barges" under § 58c(c)(5), defendant urges the vessels also meet the definition of "ferries" con-

tained in § 58c(c)(1). Def's Br. at 10–11. Defendant maintains the definition of "ferries" encompasses all vessels that fit within the statute's terms, including those that may also satisfy the "barge" definition in § 58c(c)(5). *Id.* at 11. Because plaintiff's vessels transport railroad cars for a distance that is less than 300 miles, defendant argues the vessels are "ferries" under § 58c(c)(1). *Id.* Moreover, defendant asserts plaintiff's position is merely an attempt to avoid the user fees that it would otherwise have to pay if it were to transport the railroad cars into the United States on railroad tracks via the Detroit tunnel. *Id.* at 12–13.

## III. Discussion

### A. *Jurisdiction*

The threshold issue presented by this case is whether this Court has subject matter jurisdiction to review Customs' decision denying plaintiff's protest. Although neither of the parties addresses the issue of subject matter jurisdiction in its papers, the facts of this case require the Court to consider the issue on its own motion. *Cf. City of Kenosha v. Bruno,* 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973) ("Neither party to the appeal has questioned the jurisdiction of the District Court, but 'it is the duty of this court to see to it that the jurisdiction of the district court, which is defined and limited by statute, is not exceeded.'") (quoting *Louisville & Nashville Ry. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908)).

### 1. Statutory Provisions

The primary jurisdictional authority for the CIT resides in 28 U.S.C. § 1581(a)-(i) (1988). Plaintiff bases jurisdiction on § 1581(i)(2) and (4) and, in the alternative, on § 1581(a). Subsection (a) indicates the following: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Subsection (i) reads as follows:

(i) In addition to the jurisdiction conferred upon the Court of International

Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the United States–Canada Free-Trade Agreement and section 516A(g) of the Tariff Act of 1930.

Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1728, as amended, 28 U.S.C. § 1581(i) (1988).

It is well-settled that "litigants [in the CIT] must first seek relief in the enumerated subsections § 1581(a)–(h) before invoking the Court's residual jurisdiction under § 1581(i)." *Phibro Energy, Inc. v. Franklin,* 17 CIT ——, ——, 822 F.Supp. 759, 762 (1993), *appeal docketed,* No. 93–1389 (Fed.Cir. May 5, 1993) (citing *National Corn Growers Ass'n v. Baker,* 6 Fed. Cir. (T) 70, 840 F.2d 1547 (1988)) (other citations omitted). Accordingly, if this Court has jurisdiction over this action under § 1581(a), jurisdiction will not lie under § 1581(i) unless plaintiff can demonstrate the remedy available to it under § 1581(a) is "manifestly inadequate." *See Miller & Co. v. United States,* 5 Fed.Cir. (T) 122, 124, 824 F.2d 961, 963 (1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) (If a remedy under

§ 1581(a)–(h) is or could have been available, plaintiff asserting § 1581(i) jurisdiction has the burden of showing how that remedy would be "manifestly inadequate."); *United States v. Uniroyal, Inc.,* 69 CCPA 179, 183–84, 687 F.2d 467, 472 (1982) (holding jurisdiction under § 1581(i) is improper because plaintiff could have filed a protest under § 1581(a) to challenge anticipated assessments). Because plaintiff has not attempted to demonstrate the remedy available to it under § 1581(a), if any, is "manifestly inadequate," the Court will first assess whether that subsection is applicable to this case.

The application of § 1581(a) depends upon the scope of the protest provisions contained in 19 U.S.C. §§ 1514, 1515 (1988). Section 1515(a) establishes, in part, the requirement that Customs issue a decision granting or denying a protest filed under 19 U.S.C. § 1514. Section 1515(a) provides for the following in relevant part:

Unless a request for an accelerated disposition of a protest is filed in accordance with subsection (b) of this section the appropriate customs officer, within two years from the date a protest was filed in accordance with section 1514 of this title, shall review the protest and shall allow or deny such protest in whole or in part.

19 U.S.C. § 1515(a). The foregoing provision functions in tandem with the protest filing requirements contained in § 1514.

■ Section 1514 indicates which Customs decisions are subject to protest, the effect of not filing a protest, and the method of filing a protest. The decisions subject to protest appear in § 1514(a), which reads as follows in relevant part:

[D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to— ... *all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury* ... shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade... .

19 U.S.C. § 1514(a) (emphasis added). The user fees at issue in this case are clearly "charges" within the meaning of § 1514(a) and, therefore, are subject to protest under this subsection. *See* 19 U.S.C. § 58c(a) (requiring the Secretary of the Treasury to "charge and collect" fees for certain Customs services).

■ The method for filing a protest appears in § 1514(c)(1), the pertinent parts of which state the following:

> *A protest* of a decision under subsection (a) of this section *shall be filed in writing with the appropriate customs officer designated in regulations prescribed by the Secretary,* setting forth distinctly and specifically each decision described in subsection (a) of this section as to which protest is made; each category of merchandise affected by each such decision as to which protest is made; and the nature of each objection and reasons therefor.... *[P]rotests may be filed with respect to merchandise which is the subject of a decision specified in subsection (a) of this section by—* ... *any person paying any charge or exaction* ....

*Id.* § 1514(c)(1) (emphasis added). The plain language of the first clause of the subparagraph indicates the Secretary of the Treasury has the authority to designate the Customs officer with whom plaintiff must file its protest. As the Court discusses more fully below, the Secretary enacted 19 C.F.R. § 174.12(d) in order to identify the Customs officer with whom plaintiff must file its protest. Plaintiff's compliance with the regulatory framework, therefore, determines whether plaintiff has satisfied the filing requirement contained in § 1514(c)(1).

The last sentence of subparagraph (1) identifies the persons who may file protests. Because this provision permits "any person paying any charge or exaction" to file a protest and the user fees that plaintiff paid were charges, plaintiff clearly had the authority to file a protest under the statute.

■ The final aspect of § 1514 that is pertinent to this case is the time limit it establishes for filing protests. This limit appears in § 1514(c)(2), which indicates the following:

> *A protest of a decision,* order, or finding described in subsection (a) of this section shall be filed with such customs officer within ninety days after but not before—
>
> (A) notice of liquidation or reliquidation, or
>
> (B) in circumstances where subparagraph (A) is inapplicable, *the date of the decision as to which protest is made.*

*Id.* § 1514(c)(2) (emphasis added). Because the protest at issue relates to a decision to impose additional user fees rather than to liquidation or reliquidation, the 90–day period for filing began on August 28, 1991—the date upon which Customs decided plaintiff would have to pay additional user fees for the railroad cars it was transporting into the United States. *See* Pl's Ex. F.

Plaintiff subsequently filed papers on November 15, 1991 with William F. Inch, Director of Customs Office of Regulatory Audit in Customs Headquarters. Pl's Ex. H. Similar to the "place of filing" requirement mentioned previously under § 1514(c)(1), whether plaintiff satisfied the statutory time limit when it filed its papers depends upon whether the filing complied with Customs' regulations.

### 2. Customs' Regulations

■ As noted above, Congress authorized the Secretary of the Treasury to designate by regulation the Customs officer with whom parties should file their protests. *See* 19 U.S.C. § 1514(c)(1). In this case, this designation is critical for purposes of determining whether plaintiff filed its papers with the correct customs officer so as to have filed a valid and timely protest under § 1514(c)(1), (2).

The record in this case indicates Customs denied plaintiff's protest because plaintiff did not comply with 19 C.F.R. § 174.12(d) (1991), which designates the Customs officer with whom a party must file its protest. Pl's Ex. I at 2. This provision reads as follows: "Protests shall be filed with the district director whose decision is protested except that, when the entry underlying the decision

protested is filed at a port other than the district headquarters, the protest may be filed with the port director at that port." 19 C.F.R. § 174.12(d). Customs determined plaintiff's protest was "invalid" and "need not be considered on the merits" because plaintiff filed it "with the Office of Regulatory Audit in Customs Headquarters" rather than with "the district director whose decision is being protested." Pl's Ex. I at 2.

This Court finds Customs erred in its determination. The Court bases its finding on two grounds: (1) the regulations upon which Customs relied are inapplicable to the decision at issue in this case; and (2) regulations established in connection with Customs' user fees expressly authorize parties to file claims with Customs' Headquarters. The Court addresses each of these bases in turn.

a. *Title 19 C.F.R., Part 174 Regulations*

Several provisions contained in title 19 C.F.R., part 174, which contains the protest regulations, indicate "the place of filing" provision contained in 19 C.F.R. § 174.12(d) is inapplicable to this case. First, as described in 19 C.F.R. § 174.0, the scope of part 174 does not encompass decisions by the Office of Regulatory Audit such as the one underlying this case. This section provides as follows: "*This part deals with the administrative review of decisions of the district director, including the requirements for the filing of protests against such decisions,* amendment of protests, review and accelerated disposition, and provisions dealing with further administrative review." 19 C.F.R. § 174.0 (1991) (emphasis added). The term "district director" in § 174.0 "means the district director of Customs at a headquarters port other than the port of New York, N.Y., and the regional commissioner of Customs for Customs Region II at the port of New York, N.Y." *Id.* § 174(1)(a). The record in this case, however, shows the decision that plaintiff challenges did not issue from a district director, but instead from the Director of Customs Office of Regulatory Audit in Customs Headquarters, William F. Inch. As a result, the Court finds the decision is outside the scope of title 19 C.F.R., part 174 as defined by 19 C.F.R. § 174.0.

Second, the decision under protest in this case is not among the types of decisions identified in 19 C.F.R. § 174.2(a) as falling under part 174. Section 174.2(a) indicates the following:

(a) *In general.* The provisions of this part shall be applicable to protests against decisions involving:

(1) Articles excluded from entry or entered or withdrawn from warehouse for consumption on or after October 1, 1970;

(2) Articles entered or withdrawn from warehouse for consumption prior to October 1, 1970, for which appraisement has not become final by October 1, 1970;

(3) Articles entered or withdrawn from warehouse for consumption prior to October 1, 1970, for which the appraisement has become final but with respect to which the entry has not been liquidated prior to October 1, 1970;

(4) Articles entered or withdrawn from warehouse for consumption with respect to which the entry has been liquidated prior to October 1, 1970, if

(i) The time for filing a protest has not expired and a protest has not been filed prior to October 1, 1970; or

(ii) A protest has been filed and has not been disallowed in whole or in part before October 1, 1970; or

(5) Articles excluded from entry before October 1, 1970, with respect to which

(i) The time for filing a protest has not expired and a protest has not been filed prior to October 1, 1970; or

(ii) A protest has been filed and has not been disallowed in whole or in part before October 1, 1970.

19 C.F.R. § 174.2(a) (1991) (emphasis in original). Because each of the preceding categories relates to decisions concerning "articles excluded from entry" or "entered or withdrawn from warehouse for consumption," this subsection suggests part 174 applies to decisions affecting entries of merchandise rather than to decisions affecting user fees. Moreover, under the principle of statutory construction *expressio unius est exclusio alterius,* which provides the expression of one implies the exclusion of all others, § 174.2(a)

also appears to exclude decisions regarding user fees from the protest provisions contained in part 174.

Third, the language used in the "place of filing" provision in § 174.12(d) demonstrates the subsection does not apply to the decision at issue in this case. As indicated above, this subsection reads as follows: "*Protests shall be filed with the district director whose decision is protested except that, when the entry underlying the decision protested is filed at a port other than the district headquarters, the protest may be filed with the port director at that port.*"[3] *Id.* § 174.12(d) (emphasis added). This subsection unambiguously applies to decisions made by district directors and its language does not permit a broader application. In addition, nothing in defendant's papers or in Customs' communications with plaintiff explains how subsection (d) applies to the parties' dispute. Because the decision underlying plaintiff's claim issued from the Director of Customs Office of Regulatory Audit in Customs Headquarters and not from a district director, the Court finds § 174.12(d) is inapplicable in this case. As discussed previously, the fact that §§ 174.0 and 174.2(a) also exclude decisions such as the one in the instant case from the scope of part 174 further supports the Court's finding. Accordingly, the Court concludes Customs erred in relying on § 174.-12(d) to invalidate plaintiff's protest.

b. *Title 19 C.F.R., Part 24 Regulations*

▪ Regulations promulgated under title 19 C.F.R., part 24, which apply to Customs' financial and accounting procedures, also indicate Customs' decision was erroneous. This part contains the regulations providing, in part, for the fees at issue in this case. *See* 19 C.F.R. § 24.22(b), (d) (1991). This part also sets forth provisions indicating where parties may file claims arising under the customs laws. The most pertinent of these

provisions is § 24.73, which indicates the following: "*Miscellaneous Claims. Every claim of whatever nature arising under the Customs laws which is not otherwise provided for shall be forwarded directly to Headquarters, U.S. Customs Service,* together with all supporting documents and information available." 19 C.F.R. § 24.73 (1991) (emphasis added).

For the reasons which follow, the Court concludes § 24.73 permits the plaintiff in this case to file its protest with "Headquarter, U.S. Customs Service." First, the Court notes because the term "claim" encompasses demands for money,[4] § 24.73 is broad enough to cover plaintiff's protest. Second, the fact that § 24.73 resides in part 24 demonstrates the provision includes claims stemming from the fees and other exactions provided for in part 24.[5] Third, as the Court has already determined 19 C.F.R. § 174.12(d) is inapplicable to plaintiff's claim, the claim is "not otherwise provided for" within the meaning of § 24.73. In short, although Congress explicitly indicated "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury" are protestable and Customs identified such matters as decisions subject to protest,[6] none of the protest provisions in title 19 C.F.R., part 174 apply in this case. Moreover, the Court does not discern anything in the record or defendant's papers, or in the regulations themselves that indicates what other regulations, if any, may apply.

As a result, the Court finds 19 C.F.R. § 24.73 performs the function described in 19 U.S.C. § 1514(c)(1). This latter provision's first clause indicates "*[a] protest of a decision under subsection (a) of this section shall be filed in writing with the appropriate customs officer designated in regulations prescribed by the Secretary,* setting forth distinctly and specifically each decision described in subsection (a) as to which protest

---

3. As stated previously, the term "district director" refers to "the district director of Customs at a headquarters port other than the port of New York, N.Y., and the regional commissioner of Customs for Customs Region II at the port of New York, N.Y." *Id.* § 174.1(a).

4. BLACK'S LAW DICTIONARY 224 (5th ed. 1979).

5. Although the Court will not endeavor to define the breadth of § 24.73, the Court nevertheless observes the section's language is sweeping in scope and would seem to encompass a wide variety of claims against Customs.

6. 19 U.S.C. § 1514(a); 19 C.F.R. § 174.11(c) (1991).

is made...." 19 U.S.C. § 1514(c)(1) (emphasis added). This passage specifically refers to § 1514(a), which includes § 1514(a)(3), and therefore applies to protests pertaining to decisions as to "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." 19 U.S.C. § 1514(a)(3). The mere fact the language following § 1514(c)(1)'s first clause applies to "merchandise" does *not* indicate the first clause's requirement that Customs designate the place for filing protests is inapplicable to protests that do not concern merchandise, such as that authorized by § 1514(a)(3) against decisions as to "charges or exactions." Because the first part of § 1514(c)(1) refers back to § 1514(a)(3), the Court finds 19 C.F.R. § 24.73 performs the function of designating the place where plaintiff should filed its protest.[7] Although this regulation requires the protest to be filed with "Headquarters, U.S. Customs Service" without explicitly designating a customs officer, the Court finds by filing the protest with Mr. Inch, the officer who made the decision at issue, and by filing at the Office of Regulatory audit in Customs Headquarters, plaintiff met the statutory filing requirements. *See* Pl's Exs. F, H. Moreover, the fact that Mr. Inch works in "Headquarters, U.S. Customs Service," further demonstrates plaintiff filed with the "appropriate customs officer" under § 1514(c)(1).

### c. *Compliance with 19 U.S.C. § 1514*

Having found plaintiff complied with the filing requirement under § 1514(c)(1), the Court now assesses the remaining statutory requirements under 19 U.S.C. § 1514. The Court previously determined the following: (1) the user fees at issue are "charges" within the meaning of 19 U.S.C. § 1514(a)(3) and, therefore, are subject to protest under this subsection; (2) as plaintiff was the party who paid the charges at issue, plaintiff had the authority to file a protest under 19 U.S.C. § 1514(c)(1)(B); and (3) because plaintiff filed its protest with Mr. Inch in "Headquarters, U.S. Customs Service," plaintiff's filing satisfied 19 C.F.R. § 24.73 and 19 U.S.C.

§ 1514(c)(1). Accordingly, only one question remains: whether plaintiff filed its protest within the 90–day the time limit established in 19 U.S.C. § 1514(c)(2)(B).

The record in this case clearly shows plaintiff satisfied this final requirement. As plaintiff filed its protest on November 15, 1991,[8] less than 90 days after the Office of Regulatory Audit decided plaintiff would have to pay additional user fees, the Court finds plaintiff satisfied the timing requirement under 19 U.S.C. § 1514(c)(2)(B). Because the Court finds plaintiff satisfied all of the statutory requirements for filing a valid protest under 19 U.S.C. § 1514 and Customs denied the protest under 19 U.S.C. § 1515, the Court concludes it has jurisdiction under 28 U.S.C. § 1581(a). Having concluded jurisdiction exists under § 1581(a), the Court will not assess plaintiff's jurisdictional claims based on 28 U.S.C. § 1581(i).

### B. *The Protest Denial*

Although the Court concludes it has jurisdiction over this case under 28 U.S.C. § 1581(a), the Court finds this action is not ripe for adjudication on the merits. In short, because Customs never considered the substance of plaintiff's protest at the administrative level, the Court declines to address the merits of plaintiff's and defendant's respective positions in this phase of the litigation. *See* 13A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3532.6, at 193 (2d ed. 1984) (Courts "should not intrude into matters that are better left to ongoing administrative disposition, but they must discharge their own functions as essential participants in an integrated regulatory process.").

The Court's conclusion is consistent with basic purposes of the ripeness doctrine. As explained by the Supreme Court, this doctrine

> prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over

---

**7.** The Court expressly declines to consider whether 19 C.F.R. § 24.73 satisfies the designation function in all cases in which a protest does not involve a decision specifically covered in 19

C.F.R. §§ 174.0–174.32. The Court limits its opinion to the facts presented.

**8.** Pl's Ex. H.

administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), *quoted in id.* at 194. In this case, Customs' decision not to address the merits of plaintiff's protest prevented the agency from formalizing its position with respect to the user fee statutes and plaintiff's interpretation thereof. Moreover, nothing on the record indicates the parties will suffer any hardship if the Court does not adjudicate the merits of the parties' respective claims. As a result, the Court concludes withholding a decision on the merits in this case conforms with the rationale underlying the ripeness doctrine. *See id.* 387 U.S. at 149, 87 S.Ct. at 1515–16. The Court remands this action to Customs to allow the agency to conduct a review of plaintiff's protest pursuant to 19 U.S.C. § 1515 and requires the agency to render a decision with respect to the protest no later than May 1, 1994.

### IV. CONCLUSION

After considering all of the parties' contentions, the Court makes the following holdings: (1) plaintiff filed a valid protest and thereby established a jurisdictional basis for bringing suit in the CIT under 28 U.S.C. § 1581(a) (1988); and (2) this action is not ripe for adjudication on the merits and is, therefore, remanded to Customs to allow the agency to conduct a review of plaintiff's protest pursuant to 19 U.S.C. § 1515.

### *ORDER*

This case having been duly submitted for decision, and the Court after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** that this matter is remanded to the United States Customs Service; and it is further

**ORDERED** that the United States Customs Service shall review the merits of plaintiff's protest under 19 U.S.C. § 1515 (1988); and it is further

**ORDERED** that the United States Customs Service shall render a decision with respect to plaintiff's protest no later than May 1, 1994.