**NORFOLK AND WESTERN RAILWAY CO., Plaintiff,**

v.

**UNITED STATES et al., Defendants.**

Slip Op. 94–173.

No. 92–10–00653.

United States Court of
International Trade.

Nov. 10, 1994.

Bodman, Longley & Dahling, Carson C. Grunewald and Dennis J. Levasseur, Detroit, MI, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen. of the U.S., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Marc E. Montalbine, Washington, DC (Matthew McConkey, Atty. Advisor, Office of Chief Counsel, U.S. Customs Service, of counsel), for defendants.

**OPINION**

CARMAN, Judge:

Plaintiff is an interstate common carrier by railroad for hire in the United States including Michigan and between the United States and Canada. In connection with its railroad transportation operations, plaintiff owns and operates barges and tugboats used to float plaintiff's railroad cars across the Detroit River from Windsor, Ontario to Detroit, Michigan and from Detroit to Windsor. Pl.'s Ex. A at 2. Each barge is fitted with railroad tracks allowing the rail cars to be loaded directly from the slip dock to the barge and vice versa. To conduct its "float operation," plaintiff uses the barges to transport those rail cars that are too tall to fit through a tunnel beneath the Detroit River. Pl.'s Ex. B at 3. Each barge carries approximately 11 railroad cars. Pl.'s Ex. A at 3.

The United States Customs Service (Customs) has the statutory authority to assess fees on certain vessels and vehicles arriving in the customs territories of the United States. 19 U.S.C. § 58c (1988 & Supp. IV 1992). These fees are designed to reimburse Customs for the provision of customs ser-

vices to those who use such services. Thus, they are described as user fees. Under certain circumstances, plaintiff's barges and the railroad cars carried thereon are subject to the user fees. On November 15, 1991 plaintiff filed a protest contesting Customs' assessment of user fees on plaintiff's railroad cars arriving in the United States. Pl.'s Ex. H. The Chief of the Carrier Ruling Branch of Customs denied plaintiff's protest on the grounds that plaintiff did not file its protest with the proper Customs officer.

The Court of International Trade (CIT) held plaintiff had filed a valid protest thereby establishing a jurisdictional basis for bringing suit in the CIT under 28 U.S.C. § 1581(a) (1988). *Norfolk & W.Ry. v. United States,* 18 CIT ——, 843 F.Supp. 728, 737 (1994); *see also* 19 U.S.C. § 58c(g)(3) (Supp. IV 1992). Because the action was not ripe for adjudication on its merits, however, this Court remanded to Customs for a determination on the merits of plaintiff's protest. *Norfolk & W. Ry.,* 18 CIT at ——, 843 F.Supp. at 737. On remand, Customs denied plaintiff's protest.

■ Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). This case does not present any genuine issue of material fact. The only remaining issue is the proper construction of 19 U.S.C. § 58c. As this issue pertains solely to matters of statutory interpretation, the Court concludes this action raises a question of law that may be resolved by summary judgment.

## I. BACKGROUND

A. *The Customs User Fee Statute*

In 1985 Congress authorized Customs to collect user fees on vehicles and vessels entering the United States. *See* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, § 13031, 100 Stat. 82, 308–10 (codified as amended at 19 U.S.C. § 58c (1988 & Supp. IV 1992)) (1985 Act). The purpose of the legislation was to capture the costs of customs services provided to

incoming vehicles and vessels by making the users of those services pay an appropriate fee. *See infra* part IV.A.2. In 1986 Congress made technical amendments to the 1985 Act increasing some fees and extensively revising the "limitations on fees" section of the statute. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, § 1893, 100 Stat. 2085, 2927–28 (codified at 19 U.S.C. § 58c (1988 & Supp. IV 1992)) (Tax Reform Act); *see infra* part IV.A.3.

Because this dispute turns on the interpretation of the user fee statute as amended,[1] it is essential to have the actual text of the statute at hand.

**§ 58c. Fees for certain customs services**

**(a) Schedule of fees**

In addition to any other fee authorized by law, the Secretary of the Treasury shall charge and collect the following fees for the provision of customs services in connection with the following:

(1) For the arrival of a commercial vessel of 100 net tons or more, $397.

(2) For the arrival of a commercial truck, $5.

(3) For the arrival of each railroad car carrying passengers or commercial freight, $7.50.

. . . .

(8) For the arrival of a barge or other bulk carrier from Canada or Mexico, $100.

. . . .

**(b) Limitations on fees**

(1) No fee may be charged under subsection (a) of this section for customs services provided in connection with—

. . . .

(C) the arrival of any ferry.

. . . .

(3) No fee may be charged under subsection (a)(3) of this section for the arrival of a railroad car whether passenger or freight during any calendar year after a total of $100 in fees has been paid to the

1. Unless otherwise noted, all references to the user fee statute are to the statute as amended.

Secretary of the Treasury for the provision of customs services for all arrivals of such passenger or freight rail car during such calendar year.

. . . .

(6) No fee may be charged under subsection (a)(8) of this section for the arrival of a barge or other bulk carrier during a calendar year after a total of $1,500 in fees charged under paragraph (1) or (8) of subsection (a) of this section has been paid to the Secretary of the Treasury for the provision of customs services for all arrivals of such barge or other bulk carrier during such calendar year.

(7) No fee may be charged under paragraphs (2), (3), or (4) or subsection (a) of this section for the arrival of any—

(A) commercial truck,

(B) railroad car, or

(C) private vessel,

that is being transported, at the time of the arrival, by any vessel that is not a ferry.

19 U.S.C. § 58c(a)(1–8), (b)(1–7).

A critical part of every statute is the definitional section. *Sierra Club v. Clark,* 755 F.2d 608, 613 (8th Cir.1985) (citations omitted). The relevant definitions in this statute provide:

**(c) Definitions**

For purposes of this section—

(1) The term "ferry" means any vessel which is being used—

(A) to provide transportation only between places that are no more than 300 miles apart, and

(B) to transport only—

(i) passengers, or

(ii) vehicles, or railroad cars, which are being used, or have been used, in transporting passengers or goods.

. . . .

(5) The term "barge or other bulk carrier" means any vessel which—

(A) is not self-propelled, or

(B) transports fungible goods that are not packaged in any form.

19 U.S.C. § 58c(c)(1–5).

As defined in the statute, the terms ferry and barge overlap. Based upon those definitions a vessel could satisfy both definitions. A vessel could be non self-propelled thus satisfying the definition for a barge. The same vessel could carry vehicles on routes less than 300 miles thus meeting the definition of a ferry. The application and interpretation of the barge and ferry definitions is critical because of the statute's prohibition against assessing user fees on railroad cars arriving on "any vessel that is not a ferry." 19 U.S.C. § 58c(b)(7). Accordingly, if plaintiff's vessels are deemed barges under the statute, no user fee should be assessed on the arriving railroad cars. A user fee of $100 would be charged on the arrival of the barge (vessel fee or vessel user fee) with a cap of $1,500 per calendar year per barge. If plaintiff's vessels are construed as ferries, however, each railroad car could be assessed a $7.50 user fee (vehicle fee or vehicle user fee) with a cap of $100 per calendar year per rail car, while the ferry itself would not be assessed any vessel fee.

**B.  *Customs' Audit and Plaintiff's Protest***

On August 28, 1991 the Director of Customs' Office of Regulatory Audit informed plaintiff it was required to pay a vehicle user fee of $7.50 for each of its railroad cars, but no vessel user fees on its vessels. Pl.'s Ex. F. Customs' rationale was that plaintiff's vessels were " 'ferries' for purposes of the user fee statute notwithstanding their apparent qualifications as 'barges' under 19 U.S.C. § 58c(c)(5)." *Id.* Because Customs considered the vessels to be ferries under 19 U.S.C. § 58c(c)(1), the agency determined plaintiff was not entitled to the vehicle user fee exemption contained in 19 U.S.C. § 58c(b)(7) for railroad cars transported by any vessel that is not a ferry. *Id.* at 1–2.

On November 15, 1991 plaintiff filed a protest against Customs' decision. Pl.'s Ex. H. The essence of plaintiff's protest was that Customs incorrectly concluded plaintiff's vessels were ferries under 19 U.S.C. § 58c(c)(1). *Id.* at 5–6. Plaintiff argued its

vessels were barges within the meaning of 19 U.S.C. § 58c(c)(5) because the vessels were pulled by tug boats and thus were not self-propelled. In sum, plaintiff contended it was only liable to pay vessel user fees on its barges and was entitled to the vehicle user fee exemption for its railroad cars because they were "transported . . . by [a] vessel that is not a ferry." *Id.* at 2, 4–5 (quoting 19 U.S.C. § 58c(b)(7)).

On remand from this Court, Customs denied plaintiff's protest on its merits finding:

> the non-self-propelled vessels involved in [this] case appear to qualify as barges arriving from Canada for the purpose of the user fee statute in view of the fact that they meet one of the two alternative requirements (i.e., not self-propelled). However, those vessels are being used to transport railroad cars between places that are less than three hundred miles apart. Therefore, the non-self-propelled vessels also qualify as ferries.
>
> . . . .
>
> [T]he appropriate user fee to collect in this circumstance is the fee established for the arrival of railroad cars carrying passengers or commercial freight under 19 U.S.C. § 58c(a)(3).

Remand Ltr. at 3–4.

## II. CONTENTIONS OF THE PARTIES

Plaintiff claims Customs' interpretation of the statutory definitions of the terms "barge" and "ferry" is erroneous. Because Congress separately defined each term, plaintiff argues, Congress intended the two definitions to be mutually exclusive. As its vessels are not self-propelled, plaintiff maintains its vessels are barges within the meaning of § 58c(c)(5) and cannot be ferries under § 58c(c)(1). Plaintiff also asserts the definitions should be applied in the sequence they appear in the statute. Thus, the definition of ferry should be applied first as it appears before the definition of barge. As "[l]ater sections of the statute control the sections that proceed [sic] it," plaintiff claims the

definition of barge should control. Pl.'s Supp.Br. at 6.

In addition, plaintiff contends Customs' interpretation improperly circumvents the limitation on user fees on railroad cars under § 58c(b)(7). Pl.'s Br. at 15–17. That is, such an interpretation would "completely do away with the limitation on user fees on railroad cars arriving on vessels that are not ferries" as provided for in the statute. *Id.* at 16. Finally, because plaintiff received a refund check reimbursing plaintiff for overpaying user fees in 1986, plaintiff argues this constituted an agency interpretation. Accordingly, any change from this interpretation requires a reasoned analysis, which plaintiff argues defendants failed to provide.

While defendants acknowledge plaintiff's vessels are not self-propelled and qualify as barges under § 58c(c)(5), defendants claim the vessels also meet the definition of ferries contained in § 58c(c)(1). Defs.' Br. at 10–11. Defendants maintain the definition of ferries encompasses all vessels that fit within that definition, including those vessels that may also satisfy the barge definition in § 58c(c)(5). *Id.* at 11. Defendants extend their argument asserting the definition of ferry is a functional one dependent on the use of the vessel. In addition, defendants contend the statutory definitions of barge and ferry are not mutually exclusive and the order of the definitions in the statute has no bearing on their interpretations. Defs.' Reply Br. at 5–8.

Finally, defendants reject plaintiff's argument that issuance of the refund check constituted an agency interpretation explaining the check was "simply an administrative matter" and not the subject of a formal decision. Defs.' Reply Br. at 9. Even if the refund was an agency determination, defendants claim any shift in agency interpretation is adequately explained on record. Defs.' Supp. Br. at 5–9.

## III. STANDARD OF REVIEW

■ In any civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930,[2] the Court reviews the

---

**2.** The Customs user fee statute is to be enforced as any other customs law or regulation. 19

U.S.C. § 58c(g)(3) (Supp. IV 1992). For pur-

record *de novo.* *Semperit Indus. Prods., Inc. v. United States,* 18 CIT ——, ——, 855 F.Supp. 1292, 1297–98 (1994). Although the decision of Customs is presumed correct and the "burden of proving otherwise shall rest upon the party challenging such decision,"[3] the Court's role in reviewing the decision is to reach the correct result. 18 CIT at ——, 855 F.Supp. at 1297 (citing *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984) (footnote omitted)). The Court will therefore consider this matter *de novo* and review the record to reach the proper result.

## IV. DISCUSSION

### A. Statutory Interpretation of the User Fee Statute

■ The crux of this dispute is the proper interpretation of the definitions of barge and ferry in the user fee statute. The first step in interpreting a statute is to examine the text of the statute. *United States v. Alvarez–Sanchez,* —— U.S. ——, ——, 114 S.Ct. 1599, 1603, 128 L.Ed.2d 319 (1994) (citations omitted). Where the content of the statute is clear and unambiguous, "that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels,* —— U.S. ——, ——, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982) (citations omitted)). The Court in this case, however, finds the terms ferry and barge as used in the amended statute are ambiguous. When the text of a statute is ambiguous, the statute must be interpreted to conform to the goals and purposes Congress intended the statute to address. *Tataranowicz v. Sullivan,* 959 F.2d 268, 276 (D.C.Cir.1992) ("[W]hile the immediate statutory text is the 'best evidence' of congressional intent, the [Supreme] Court has never held that it is the *only* such evidence."), *cert. denied,* —— U.S. ——, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993). Accord-

ingly, when the statutory language is not precise, the court's duty is to find the interpretation "embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *NLRB v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957) (Frankfurter, J., concurring in part and dissenting in part).

### 1. Judicial Interpretation of Statutory Law

■ Legislative history is a legitimate and useful guide to reveal the purpose of a statute in a case of statutory ambiguity. *Burlington N. R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987). The aim of examining legislative history is to uncover the intent of Congress in enacting the statute[4] thus "giv[ing] effect to the will of Congress." *Negonsott v. Samuels,* —— U.S. ——, ——, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993) (citation omitted).

A fruitful source of legislative history for this statute is its conference report. A conference report "represents the final statement of terms agreed to by both houses, [and] next to the statute itself it is the most persuasive evidence of congressional intent." *Demby v. Schweiker,* 671 F.2d 507, 510 (D.C.Cir.1981); *accord Resolution Trust Corp. v. Gallagher,* 10 F.3d 416, 421 (7th Cir.1993) (citation omitted).

### 2. The Purpose of the User Fee Statute

■ Congress' purpose in enacting the user fee statute was to "offset the costs of processing arrivals into the customs territory of the United States." H.R.Rep. No. 241, 99th Cong., 2d Sess. 92 (1986), *reprinted in* 1986 U.S.C.C.A.N. 579, 670. The statute provides:

all funds in the Customs User Fee Account shall be available, . . . to pay the costs . . .

---

poses of establishing liability under the statute, a user fee is considered a customs duty. *Id.*

**3.** 28 U.S.C. § 2639(a)(1) (1988).

**4.** As stated over two centuries ago, "the most universal and effectual way of discovering the

true meaning of a law, when the words are dubious, is by considering the reason and spirit of it; or the cause which moved the legislator to enact it." 1 William Blackstone, *Commentaries* 61 (1765) (text modified to reflect modern English).

incurred by [the Customs Service] in conducting commercial operations, including, but not limited to, all costs associated with commercial passenger, vessel, vehicle, aircraft, and cargo processing.

19 U.S.C. § 58c(f)(2). The user fees are to be used to "strengthen the Custom [sic] Service's commercial operations, provide better service to the importing community, and more effectively carry out its responsibilities of collecting import duties." S.Rep. No. 146, 99th Cong., 2d Sess. 347 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 309. It was anticipated the user fees would generate "increased revenues of over 650 million" in the first three years following enactment. H.R.Rep. No. 241 at 8, *reprinted in* 1986 U.S.C.C.A.N. at 586. Accordingly, this Court must be mindful of the stated purpose of the legislation—i.e., to generate revenue from the users of customs services to offset the provision of customs services. To do otherwise would be to thwart the will of Congress.

The principal interpretation of the statute advanced by plaintiff is that any vessel that is not self-propelled should be construed as a barge notwithstanding the vessel may also satisfy the statutory definition of a ferry. This construction would prohibit the assessment of vehicle user fees on railroad cars carried on non self-propelled vessels. To interpret the statute in this manner, however, would appear to contravene the intent of the statute as it would exclude an entire class of railroad cars, those carried on non self-propelled vessels, from vehicle user fees despite the costs their arrival imposes on Customs services.[5] The Court observes the narrow construction of the statutory language urged by plaintiff appears incompatible with congressional intent of offsetting the costs of processing arrivals into the customs territory of the United States.

### 3. *The Tax Reform Act of 1986—Amendment of the User Fee Statute*

The Tax Reform Act made several revisions to the user fee statute, but most signifi-

cant for purposes of this action was the treatment of railroad cars and barges. Specifically, the Act prohibited vehicle user fees on railroad cars "that [are] being transported, at the time of arrival, by any vessel that is not a ferry." Tax Reform Act of 1986, Pub.L. No. 99–514, § 1893(b)(1), (b)(3), 100 Stat. 2085, 2927 (codified at 19 U.S.C. § 58c(b)(1)(C), (b)(7) (1988 & Supp. IV 1992)). The Act modified the $397 commercial vessel fee by establishing a $100 fee for "barge[s] or other bulk carrier[s] from Canada or Mexico." *Id.* § 1893(a)(1)(B), (a)(3), 100 Stat. at 2927 (codified at 19 U.S.C. § 58c(a)(3), (a)(8)). The Tax Reform Act also limited to $1,500 the total amount of user fees Customs could collect during a calendar year on an individual barge and maintained the $100 cap on annual user fees that Customs could assess on individual railroad cars. *Id.* § 1893(b)(1) (codified at 19 U.S.C. § 58c(b)(6)).

In explaining its rationale for making these changes, Congress made clear it did not envision barges functioning as ferries and carrying railroad cars to be exempt from the vehicle user fees. Congress explained in the conference report to the Tax Reform Act that "[a] lower user fee of $100 on barges and bulk carriers arriving from Canada and Mexico is provided in light of the fact that *such vessels compete with trucks and rail cars arriving by land from Canada and Mexico, which are subject to much lower user fees.*" H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II–855 (1986), *reprinted in* 1986 U.S.C.C.A.N. 4075, 4943 (emphasis added). This rationale appears to make sense only if Congress concluded trucks and railroad cars arriving by land were competing with barge traffic because the barges were carrying cargo in bulk.

A brief example will make this point clear. The Detroit port has two points of entry for railroad cars traveling from Canada into the United States—the Detroit Tunnel under the Detroit River and the slip docks used for barge entries on the Detroit River. Customs User Fee Audit Report, *reprinted at* Pl.'s

---

**5.** This outcome alone, however, does not warrant an outright rejection of plaintiff's interpretation as Congress did not intend to assess user fees on *all* incoming rail cars carried on *all* vessels. *See*

19 U.S.C. § 58c(b)(7) (prohibiting user fees on rail cars being transported on "any vessel that is not a ferry").

Ex. G at 2. Under the original statute, if an importer brought 10 railroad cars into the United States via the Detroit tunnel, the importer paid $50 in vehicle user fees—10 railroad cars at $5 each.[6] If the importer chose to bring the same 10 railroad cars into the U.S. on a commercial vessel as the plaintiff did,[7] the importer paid the same vehicle user fee, $5 per railroad car, for total user fees of $50. Thus, there was no competitive advantage to using the Detroit tunnel.

The impact on the importer would change if the imported goods were loaded in bulk. If the importer loaded its 10 railroad cars with a bulk good, for example iron ore, and entered the cars into the United States via the tunnel, the importer would pay the same $50 in vehicle user fees—10 railroad cars at $5 each. If, however, the importer shipped the same amount of iron ore, but loaded the iron ore in bulk on the deck of a barge, the *barge* could be assessed a commercial vessel user fee of $397 upon arrival in the U.S.[8] Thus, under the original statute, transporting iron ore into the U.S. by barge would cost the importer $397 in vessel user fees whereas transporting the same amount of iron ore through the tunnel would have cost the importer only $50 in vehicle user fees.

It seems to be this competitive advantage Congress sought to correct in the Tax Reform Act. First, Congress included a definition for a "barge or other bulk carrier" and set the vessel user fee for barges from Canada or Mexico at $100 per arrival. Tax Reform Act § 1893(a)(1)(B), (a)(3), 100 Stat. at 2927 (codified at 19 U.S.C. § 58c(a)(3), (a)(8)). Second, Congress placed an annual cap of $1,500 on such vessel fees. *Id.* § 1893(b)(1) (codified at 19 U.S.C. § 58c(b)(6)). In this way, Congress seems to have attempted to mitigate the cost of importing bulk goods arriving by vessels from those contiguous countries.

After examining the amended statutory language and the legislative history explaining the purpose and intent of the amendment, this Court finds Congress intended to regulate as "barges or other bulk carriers" those vessels functioning as transporters of cargo in bulk. *See* H.R.Conf.Rep. No. 841 at II–855, *reprinted in* 1986 U.S.C.C.A.N. at 4943. Congress did not intend that vessels merely transporting railroad cars be treated the same as "barges or other bulk carriers," but instead Congress intended that such vessels should be classified as ferries under the amended statute. *See* 19 U.S.C. § 58c(a)(3), (b)(7)(B); *see also* H.R.Conf.Rep. No. 841 at II–855, *reprinted in* 1986 U.S.C.C.A.N. at 4943 ("railroad cars carried by ... a ferry would be subject to the applicable [user] fee"). Accordingly, the railroad cars carried on such vessels are subject only to vehicle user fees.

Presumably, for the purpose of assessing user fees, if a vessel were carrying simultaneously iron ore on its deck and separate railroad cars, the vessel would be *functioning* as a transporter of cargo in bulk, i.e., iron ore, and subject to a vessel user fee. As to the railroad cars, the vessel would be *functioning* as a ferry and only subject to vehicle user fees. It would seem under these circumstances, Customs could exact a vessel user fee and a vehicle user fee.

#### 4. *Comparison of Statutory and Common Definitions*

The drafters of the user fee statute made plain their understanding that a barge is to be construed as a vessel carrying bulk cargo

---

**6.** The Tax Reform Act raised the vehicle fee per railroad car arriving in the United States from $5 to $7.50 per car. Tax Reform Act § 1893(a)(2), 100 Stat. at 2927 (codified as amended at 19 U.S.C. § 58c(a)(3)). For purposes of consistency, the example uses the original user fee of $5 per railroad car.

**7.** Pl.'s Resp. to Defs.' Statement of Facts at 5; Pl.'s Br. at 4, 7.

**8.** Because the original user fee statute made no mention of a "barge or other bulk carrier," a barge under the original statute presumably was assessed the $397 vessel user fee only when it satisfied the original statute's term of a "commercial vessel of 100 net tons or more." 19 U.S.C. § 58c(a)(1). Otherwise, it seems Customs would have been unable to assess a vessel user fee on the barge. For purposes of this explanation, a barge loaded with bulk cargo is presumed to be a commercial vessel of 100 net tons or more and subject to the $397 commercial vessel user fee.

by their repeated use of the phrase "barge or other bulk carrier" in the text of the statute. *See* 19 U.S.C. § 58c(a)(8), (b)(5)(C), (b)(6), (c)(5). Considering a barge as a bulk carrier is consistent with the common definitions of a barge as a "large flat-bottomed coastal trading vessel,"[9] "used principally in harbors or inland waterways ... for the transport of goods (as coal, oil, lumber, or grain),"[10] which is "specially adapted for the transportation of bulky freight such as coal or lumber, sand, [and] stone."[11] It is this common definition of barge that Congress almost certainly had in mind when it construed a barge as a "bulk carrier" and defined it as a vessel that "transports fungible goods that are not packaged in any form." 19 U.S.C. § 58c(c)(5).

■ Comparing the statutory definition of a ferry with its common definition underscores that when a vessel is functioning as a ferry in the transportation of goods or passengers it is a ferry notwithstanding its source of power. In the statute's definition of ferry there is no mention of the vessel's source of power—only a description of how the vessel *"is being used."* 19 U.S.C. § 58c(c)(1) (emphasis added). This definition is consistent with the common meaning and usage of a ferry. For example, one source defines a ferry as a "continuation of the highway from one side of the water over which it passes to the other, and is for transportation of passengers or of travellers with their teams and vehicles." *St. Clair County v. Interstate Sand & Car Transfer Co.,* 192 U.S. 454, 466, 24 S.Ct. 300, 304, 48 L.Ed. 518 (1904) (citation omitted). This focus on a ferry as an extension of a highway appears in other definitions, such as "[w]hether a boat is a 'ferry' and comprises a continuous part of the road or highway depends on length of run, type of ship." *Black's Law Dictionary* 620 (6th ed. 1990) (citing *Alaska S.S. Co. v. Federal Maritime Comm'n,* 399 F.2d 623, 628 (9th Cir.1968)). In addition, a ferry is defined as "a vessel designed for the transport of persons and goods ... on a regular

schedule.... They can vary from small boats ... to large specially built ships with roll-on, roll-off facilities for cars, lorries, and trains." *The Oxford Companion to Ships and the Sea* at 299. These definitions capture the essence of plaintiff's float operation. Plaintiff's vessels serve in effect as a continuation of the railroad tracks from the Canadian side of the river to the U.S. side. Its vessels are specially built ships with roll-on, roll-off facilities for railroad cars. In this context, the Court holds plaintiff's vessels are functioning or being used within the meaning of the statute as ferries.

In sum, although plaintiff's vessels may be non self-propelled and could be construed as falling under a broad interpretation of the statute's term as barges, this Court observes the *use* and *function* of plaintiff's vessels constrain the Court to hold defendants' classification of plaintiff's vessels as ferries is correct under the statute. This interpretation clearly conforms to the intent of Congress.

B. *The 1987 Refund of User Fees as a Prior Agency Interpretation*

■ It is well-settled that administrative agency determinations are not set in stone and subsequent changes or deviations from prior agency interpretations are entitled to deference by the courts. *Mantex, Inc. v. United States,* 17 CIT ——, ——, 841 F.Supp. 1290, 1302–03 (1993) (citing *Rust v. Sullivan,* 500 U.S. 173, 186–87, 111 S.Ct. 1759, 1768–69, 114 L.Ed.2d 233 (1991)). The agency must, however, provide a reasoned analysis for a shift in its interpretation. *Rust,* 500 U.S. at 187, 111 S.Ct. at 1769 (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983)).

■ Plaintiff relies on this body of law to assert Customs failed to adequately explain why it issued a refund check in 1987 for overpayment of user fees, but apparently has

---

9. *The Oxford Companion to Ships and the Sea* 59, 60 (Peter Kemp ed., 1976).

10. *Webster's Third New International Dictionary* 176 (1986).

11. Rene de Kerchove, *International Maritime Dictionary* 42 (2nd ed. 1961).

reversed itself by now seeking vehicle user fees on railroad cars carried on plaintiff's vessels. Plaintiff's argument is unconvincing. The Court rejects the contention that the issuance of the refund check in 1987 constituted an agency interpretation.

An interpretation is the "art or process of discovering and ascertaining the meaning of a statute." *Black's Law Dictionary* at 817. It is difficult to fathom how the issuance of a refund check from a government agency without any accompanying explanation constitutes the "art or process of discovering and ascertaining the meaning of a statute." Without more, there is no basis upon which to find that an agency interpretation was made. This Court holds the issuance of the refund check did not constitute an agency interpretation.

## V. CONCLUSION

Upon consideration of all papers and contentions of the parties and after a careful review of the statute and its legislative history, the Court holds that Customs in examining the use and function of plaintiff's vessels properly interpreted the user fee statute as amended and correctly classified plaintiff's

vessels as ferries. Therefore, railroad cars transported on plaintiff's vessels and properly classified as ferries may be assessed the appropriate Customs vehicle user fee as provided by law. Defendants' motion for summary judgment is granted.

## *ORDER*

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** that defendants' motion for summary judgment is granted; and it is further

**ORDERED** that plaintiff's cross-motion for summary judgment is denied; and it is further

**ORDERED** this action is dismissed.